# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
June 28, 2011 Session

# CHARLIE LEE INGRAM
v.
# REBECCA AND RANDY WASSON

**Appeal from the Circuit Court of Perry County**
**No. 3411  Jeffrey S. Bivins, Judge**

**No. M2010-02208-COA-R3-CV - Filed November 21, 2011**

This appeal concerns the existence of an easement.  The dispute between the two adjoining landowners began after the defendant landowners blocked the plaintiff neighboring landowner's access to a roadway crossing over the defendants' property.  The plaintiff landowner filed this action seeking condemnation or a finding of an implied easement for access to the roadway over the defendants' property, arguing that his property was landlocked. Upon the admission into evidence of several affidavits, the trial court found both an easement implied from prior use and, in the alternative, an easement created by necessity. The defendant landowners now appeal.  We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Thomas I. Bottorff, Brentwood, Tennessee, for the Defendant/Appellants Rebecca and Randy Wasson.

Michael E. Spitzer, Hohenwald, Tennessee, for the Plaintiff/Appellee Charlie Lee Ingram.

# OPINION

## FACTS AND PROCEEDINGS BELOW

This appeal arises from a dispute between adjoining landowners. Both parties' tracts of land were included in a 200-acre parcel of land in Perry County, Tennessee, purchased in August of 1971 by Vacation Lands of America, Inc. ("VLA") from Arthur G. Taylor. After the deed was recorded in September 23, 1971, the land was subdivided into several different tracts. Almost immediately, on October 28, 1971, VLA sold a thirty-acre tract of the subdivided land to Mr. Alvin Jones, referred to in this Opinion as Parcel 12. Parcel 12 was the southernmost or lowest parcel in VLA's 200-acre tract and was the only VLA tract that adjoined Lick Creek Road, a public road. VLA's deed to Mr. Jones, recorded on November 11, 1971, states: "This conveyance is subject to a road easement of 50 feet on the East boundary line of the above described property." The fifty foot road easement referred to in the Jones deed connected Parcel 12 to what will be herein referred to as ridge road.[1] Parcel 12 was conveyed several more times until Plaintiff/Appellee Charlie Lee Ingram ("Ingram") acquired it on January 22, 2001.

In addition to Parcel 12, VLA sold several other parcels of land, including parcels referred to herein as Parcel 7 and Parcels 6.0, 6.1, 6.2, and 6.3 (collectively "Parcel 6"). Parcel 7, located in the most northern part of VLA's original acreage, was purchased on December 6, 1971 by John Burns and Delbert Hart. Three original deeds to Parcel 7 contain the same language regarding the fifty foot road easement on the eastern boundary line. At the time of the proceedings below, Ingram owned Parcel 7 as well as Parcel 12, and Defendant/Appellants Randy and Rebecca Wasson (collectively "the Wassons") owned Parcel 6, which is sandwiched between Ingram's Parcel 12 and Parcel 7. The underlying issue in this case concerns a roadway, referred to in the record as "hollow road," that passes from Parcel 12 owned by Ingram traveling north through the middle of Parcel 6 owned by the Wassons and into Ingram's Parcel 7.[2] For ease of reference, Exhibit 1 from the proceedings below, showing the tracts at issue, is appended to this Opinion.[3]

---

[1]The record refers to ridge road in lower case letters.

[2]The record refers to hollow road in lower case letters.

[3]Exhibit 1, appended at the end of this Opinion, denotes Panel 12 ("PC 12") and Parcel ("PC 7"), both owned by Ingram, as well as Parcel 4 ("PC 4"), owned by Ingram but not at issue in this appeal, and Parcel 3 ("PC 3") and Parcel 10 ("PC 10"), also not at issue in this appeal. Parcel 6 is not specifically denoted in Ex. 1, but is the 81.70 acre tract of land that is surrounded by PC 12, PC 7, PC 4, PC 3 and PC 10. Hollow road is the line going north/south through roughly the center of Parcel 6.

In approximately 2004, a series of disputes arose between Ingram and the Wassons. These disputes culminated in the Wassons taking actions to allegedly "block" Ingram's access to hollow road, which runs north-south through the center of the Wassons' Parcel 6.

As a result, on June 15, 2005, Ingram filed a complaint against the Wassons in the General Sessions Court for Perry County, Tennessee. The complaint sought an easement by necessity, or in the alternative, condemnation of a right-of-way for Ingram's benefit. The complaint alleged that, on two occasions, the Wassons had blocked his access to hollow road. It stated: "Parcel 7 is surrounded or enclosed by the lands of other people who refuse to allow [Ingram] a private road to pass to or from his lands; and that [hollow road] is the most adequate, convenient, and economical location for a private access road [to Ingram's property] located on Parcel 7 from Lower Lick Creek Road."

On June 27, 2005, Ingram filed a motion for temporary injunctive relief, seeking to enjoin the Wassons from obstructing his access to hollow road. In an affidavit filed in support of the motion for a temporary restraining order, Ingram stated that hollow road has been in existence and used by owners of the landlocked Parcel 7 for over seventy years and had been used by him since his purchase of the tract in 2002. On July 12, 2005, after a hearing, the General Sessions Court issued a temporary injunction against the Wassons, pending a final disposition of the parties' dispute. The Wassons appealed this order and, on October 17, 2005, the matter was transferred to the trial court below, the Circuit Court of Perry County, Tennessee ("trial court"). Once the matter was transferred to the Circuit Court, the Wassons filed an answer as well as a counter-complaint for damages and injunctive relief.[4]

On November 21, 2007, the Wassons filed a motion to dismiss and to dissolve the temporary injunction. The Wassons filed two affidavits in support of the motion. After a hearing, the Wassons' motion to dismiss was denied. On July 1, 2008, the trial court held a hearing on the Wassons' motion to dissolve the temporary injunction.[5] Shortly after the hearing, the trial court entered an order finding that Ingram "does not have any other clear, easy or acceptable present access to his 100 acre tract identified as parcel 7 other than the hollow road" and ordered that the temporary injunction remain in effect pending a final hearing. The order

_____

[4]Subsequently, the trial court entered an order directing Ingram to amend his complaint to name additional adjoining landowners as defendants, in view of the possibility that relief might be considered as to their property. No issue on appeal is raised concerning any landowners other than Ingram and the Wassons.

[5]The trial court's order setting a hearing on the Wassons' motion to dissolve the temporary injunction refers to a hearing before the trial judge and a jury of view. However, the order on the Wassons' motion does not refer to a jury of view, and we have found no report by a jury of view in the record. For a discussion of the use of a jury of view in a private condemnation suit, *see Wolfe v. Jaeger*, No. W2008-00923-COA-R3-CV, 2009 WL 723529, at *4 (Tenn. Ct. App. Mar. 19, 2009). The issue is not raised on appeal.

states that the trial court's decision was based on "the motion, statements of counsel for each party, the judge traveling to and viewing the property[6] with each party having the opportunity to point out their respective positions, and upon the entire record."

Subsequently, Ingram filed a second amended petition seeking condemnation or the declaration of an easement by necessity. On November 13, 2008, Ingram filed a motion for summary judgment on the theory of easement by necessity. In support of the motion, Ingram filed three affidavits, a memorandum, and a statement of material undisputed facts.

On June 1, 2009, the trial court denied Ingram's motion for summary judgment, finding that there was a genuine issue of material fact. A trial date was set. However, the parties later agreed that it was unnecessary to conduct a trial in which the parties called witnesses and offered live testimony. The parties agreed that the trial court would make its decision based on the evidence previously submitted by both parties in conjunction with Ingram's summary judgment motion and the Wassons' motion to dismiss the temporary injunction. This included the affidavits of various witnesses; the method on which the parties agreed necessarily involved the trial court's evaluation and assessment of the credibility of testimony given by affidavit.[7] The order gave the parties an opportunity to submit additional proof, apparently by affidavit as well. Both parties did so. The Wassons filed an affidavit by a fact witness and a report by an expert, a land surveyor. Ingram filed an additional affidavit by a fact witness. The Wassons also filed a cross-complaint against other neighboring landowners.

On December 16, 2009, the trial court conducted a hearing in which the lawyers argued the case based on all of the pleadings, orders, affidavits, exhibits, and the record as a whole. The affidavit testimony and other evidence considered by the trial court is summarized below.

The Wassons submitted the affidavit of Defendant/Appellant Rebecca Wasson. Ms. Wasson described the series of transactions by which she came to own the tracts that comprise Parcel 6, initially with her first husband, Michael Garland, and then with Mr. Wasson. During much of this time, Parcel 12 (through which part of hollow road runs) was owned by Robert and Carolyn Van Swol ("the Van Swols"). Ms. Wasson asserted that, in 1986, she and her then-husband Michael Garland and the Van Swols constructed the hollow road at issue. Ms. Wasson stated that, even prior to 1986, she used the hollow road on Parcel 12 as a driveway,

---

[6]At this point, the case was assigned to Judge Robbie Beal, who viewed the property at issue. The case was later transferred to Judge Jeffery S. Bivins, who issued the decision being appealed herein. The record does not indicate that Judge Bivins viewed the property at issue.

[7]No issue on appeal is raised as to the agreed trial by affidavit testimony.

with the permission of the Van Swols, based on her friendly relationship with them when they owned Parcel 12. Ms. Wasson described several property disputes in the area since her purchase of the land in 1972. In particular, she described a dispute that arose in 1995 between the then-owners of Parcel 12 and 7 over the use of hollow road, which ultimately culminated in a meeting of the interested parties. Ms. Wasson stated that she was in attendance at this meeting, and the dispute was resolved by allowing the owner of Parcel 7 to use hollow road to access Parcel 12 and the public road. After Ingram acquired Parcel 12 in 1997, Ms. Wasson said, at one point Ingram had called her in Memphis to ask if he could hunt and plant some corn on their property, which she allowed for a limited time, and then later withdrew her permission. Ingram later acquired Parcel 7 in 2002, she said. Ms. Wasson suggested in her affidavit that Ingram asked for permission to complete some road work on the Wassons' property in order to access Parcel 7.[8] She states that at that point, she felt "something might be amiss" and later discovered that Ingram had extended the old logging trial to reach Parcel 7. She indicated that Ingram had crossed their property on numerous occasions, and had allowed other persons to do so, all without the Wassons' permission.

The Wassons submitted the affidavit of L. Brooks Garland ("Mr. Garland"), a lawyer, who did a title search and attempted to trace the existence of both ridge road and hollow road, based on deeds in the Perry County Register of Deeds.[9] From his review, Mr. Garland opined that ridge road has been in existence for at least 69 years and that VLA "recognized its existence and intended that it be used as an access road from Old Hollow Road to the parcels it sold." In his affidavit, Mr. Garland found the first reference to hollow road in a 1993 deed from Parcel 12's former owners, the Van Swols, to the Wassons in which the Wassons were granted a right-of-way easement over Parcel 12 via both ridge road and hollow road. Attached as exhibits to Mr. Garland's affidavit were the source documents on which he relied, including recorded maps and numerous deeds.

Ingram submitted the affidavit of Mr. Wayne Leeper, a neighbor of Ingram. Mr. Leeper stated that, in the 1960s, he and his father farmed the land that belonged to Ingram and to the Wassons at the time of the trial. He stated that he and his father "always accessed the property by the hollow road that [Ingram] uses and which leads from Lick Creek Road." Mr. Leeper also said that he was familiar with several old ridge roads leading from Lick Creek Road, but "there has never been any roadway that was used to gain access to the Ingram 100

---

[8]Ms. Wasson intimated, but did not say expressly, that she did not grant Ingram permission to complete the road work; she said only that she was surprised to find that Ingram had cut a road beyond the place where they had previously crossed the creek, but had not visited in nearly two years.

[9]It is not stated in the record whether Mr. Garland is related to Ms. Wasson's former husband, Michael Garland.

acre tract [Parcel 7] other than the existing hollow road that Ingram currently uses." Mr. Leeper asserted that, at the time VLA purchased the entire 250-acre tract, "the hollow road used by [Ingram] was the only access available and used for the back tract which [Ingram] currently owns. . . . [and] in the 60's that you could travel the hollow road and go out the hollow up a back ridge and onto Owl Creek" in a jeep, but he was unsure that it was passable at this time.

Ingram filed the affidavit of Mr. Ellis McKnight[10] ("Mr. McKnight"), another resident of Perry County familiar with the land at issue. Mr. McKnight stated that, in the 1950s, he "would use the hollow road from Lick Creek Road and to the present 100 acre tract owned by Lee Ingram [Parcel 7] and hunt in this area." He said that he was aware of "many hollow and ridge roads leading off from Lick Creek Road, but [he was] not familiar with any road which was used to gain access to the Ingram 100 acre tract [Parcel 7] other than the current road [Ingram] uses in this hollow."

Ingram filed another affidavit by a long-time resident of Perry County, Mr. Ray Hinson ("Mr. Hinson"). Mr. Hinson stated that the hollow road in question was formerly a wagon road that could be traveled all the way out from Lick Creek Road along the base of the ridge and into Parcel 7. He expressed confidence that the "hollow road which is currently being used, and was the same one used in 1941, was also the road that accessed the property when [VLA] purchased the property and real estate agent Bob Mathis" had an interest, either as seller or owner. Mr. Hinson recalled that in approximately 1947, when he was about fourteen, he and his stepfather attempted to cut timber off a tract adjoining Parcel 7. Due to the steep hills, they were forced to use the hollow road to drive the timber down, as well as to access his stepfather's corn crops, as it was the only way to access Parcels 6 and 7.

Ingram filed an additional affidavit by real estate agent Jonathan Mark Mathis. Mr. Mathis stated that he was a real estate agent for many years with his father, and that he and his father marketed the property for VLA when VLA owned all of the parcels at issue. Mr. Mathis said that he was involved as the selling agent for Parcel 7, and that he eventually purchased that parcel in 1992. Mr. Mathis stated: "From the beginning of the purchase by [VLA] in 1971 and to the date of my father's and my purchase of [Parcel 7], the access to [Parcel 7] was along a hollow roadway that ran at the base of a ridge and along the current roadway used for access to that property." Subsequently, as a real estate agent, Mr. Mathis sold Parcel 7 three times, one of which was to Ingram. Each time Mr. Mathis showed the property, he used the hollow roadway, and to his knowledge each time he showed it for VLA, there had

---

[10]In the Wassons' brief, Ellis McKnight is referred to as "Ms. McKnight" and as "she." This Court is unsure of Ellis McKnight's gender. However, since Ingram presumably solicited McKnight's affidavit and refers to McKnight as "Mr. McKnight" and "he," for the purpose of this appeal we will do the same.

never been any other access to the property other then the access road currently used by Ingram, "the existing roadway in the hollow," apparently referring to hollow road.

The Wassons filed the affidavit of their former neighbor, Carolyn Van Swol.[11] Ms. Van Swol stated that what Ingram referred to as hollow road existed in 1979, but at that time there was an "old grown-up logging trail on [Parcel 12] that . . . was blocked with many growing trees and downed trees. It was barely recognizable as any kind of trail at all and it was not passable." Ms. Van Swol stated that due to the inability to pass, the Van Swols and the Wassons had a mutual agreement under which each allowed the other to cross the other's fields to access Parcels 12 and 6, respectively. Ms. Van Swol stated that, at some point, the logging trail was cleared and extended to create what is now hollow road, but she was not clear on when this was done. Ms. Van Swol stated that ridge road was clear of trees and brush and easily transversed; there was no time frame for this assertion. In her affidavit, Ms. Van Swol claimed that Mr. Mathis told her that the only way to access Parcel 7 was via Owl Hollow Road, a public road, but that she gave Mr. Mathis's father permission to use hollow road at some unspecified time.

Ingram filed a second affidavit by real estate agent Jonathan Mark Mathis, who represented VLA in 1971. In this second affidavit, Mr. Mathis refuted several of the assertions in the affidavit by Ms. Van Swol. Of relevance, Mr. Mathis claimed in the second affidavit that it was the obvious intent of VLA "that the Hollow Road be the access for all tracts as we marketed them for sale." He insisted that, "[i]n showing the properties, I never accessed Parcel 7 by any route other than by way of the Hollow Road. . . ."

In addition, the record includes the affidavit of Scottie Brewer, a registered land surveyor.[12] In his affidavit, Mr. Brewer said that he reviewed the deeds to the Wassons and Ingram tracts as well as neighboring tracts, and that he surveyed the property. Mr. Brewer stated that he "looked for express easements for access . . . [and] did not find any express easement granted to Ingram or his predecessors in title that would allow him to gain access from any adjoining property owner and to [Parcel 7] which is, otherwise, landlocked." Mr. Brewer stated

---

[11]The affidavit of Carolyn Van Swol that is contained in the appellate record seems to be missing the signature page and possibility more pages, as the affidavit abruptly ends at paragraph 10 and does not seem to be signed or notarized. However, it appears that her affidavit was considered by the trial court. No issue on appeal is raised as to any deficiencies in Ms. Van Swol's affidavit.

[12]The record does not reflect which party submitted the affidavit of Scottie Brewer. In Mr. Brewer's affidavit, he refers to having prepared numerous surveys for the Wassons, and his affidavit was filed approximately the same time as the Wassons' answer and their other supporting affidavits. However, the Wassons claim in their appellate brief that Ingram filed the affidavit of Brewer without giving the Wassons prior notice.

"without reservation that the hollow roadway . . . is the only access to [Parcel 7] which is accessible with a two (2) wheel drive vehicle" and that he "did not find any roadbed leading from the ridge road along the properties of Heartwood Forestland that leads down the steep grade and into the Ingram tract identified as [Parcel 7]." With respect to the fifty foot road easement mentioned in VLA's deed to Alvin Jones, Mr. Brewer stated that, in his survey, he discovered "no roadway, but only an all terrain vehicle trail, that leads from the southeast corner of Wasson [Parcel 6] and the northeast corner of [Parcel 12] and to a 4 wheel drive passable ridge road which begins approximately 381.71 feet from the northeast corner of" Parcel 12. He stated bluntly that he "found no express easement from any direction for access to the landlocked [Parcel 7]."

The record also included numerous deeds and several maps as to the parcels of land at issue. A video of the property was submitted as well.

On July 27, 2010, the trial court issued an oral ruling. The oral ruling was reduced to writing in a judgment[13] dated September 22, 2010, which incorporated by reference a transcript of the oral ruling. In the lengthy written order, the trial court carefully outlined the basis for its finding that Ingram had established by a preponderance of the evidence both an implied easement and an easement by necessity along hollow road across the Wassons' Parcel 6, for ingress and egress to Parcel 7.

In its analysis of the implied easement, the trial court cited ***Cellco Partnership d/b/a/ Verizon Wireless, et al. v. Shelby County, Tennessee, et al.***, 172 S.W.3d 574 (Tenn. Ct. App. 2005), and specifically the factors for an implied easement that were recited in that case. These elements are: (1) separation of title; (2) prior to the separation, long-established and obvious use, showing that the use was intended to be permanent; (3) a showing that the easement is essential to the beneficial enjoyment of the land granted or retained; and (4) continuous servitude, as distinguished from temporary or occasional. ***Id.*** at 589. With respect to the first element, separation of title, the trial court stated that it needed "only go back in time to the property at issue being owned by [VLA]" to find separation of title. With respect to the second element, that the easement be "long established and obvious or manifest as to show that it was meant to be permanent" at the time of the title was separated, the trial court stated that it considered the affidavits of Mr. Leeper, Ms. Van Swol, and Mr. Garland, but that it gave "greater weight" to the affidavits of Mr. McKnight, Mr. Hinson, and Mr. Mathis because they did not appear to have a direct stake in the outcome of the litigation. ***See id.*** at 589. After "balancing" this testimony, the trial court found that Ingram "has carried his proof

---

[13]The original document was entitled Final Judgment, however, the word "Final" was marked through and initialed by the trial judge.

by a preponderance of the evidence that there has been a long established and obviously manifest use involved in the 'hollow road' to show that it was meant to be permanent."

With respect to the third element of an easement by implication, the necessity that the easement be essential to the beneficial enjoyment of the land, in the context of the case, the trial court interpreted this element as whether or not Parcel 7 is in fact landlocked. After "a careful review of the deeds" and after considering "the Affidavits[14] of Scottie Brewer, the Defendant's land surveyor, the Court cannot find any express easement or any type of easement which would prove that the land was anything other than landlocked."

With respect to the fourth element for an implied easement recited in *Cellco*, that the easement be continuous rather than temporal or occasional, the trial court concluded that "the Court cannot find any evidence to show that 'hollow' roadway was intended to be a temporary road or for occasional use, . . . [based] on the Affidavit testimony of Mr. Leeper, Mr. McKnight, Mr. Hinson, and Mr. Mathis." The trial court noted that it had considered the Wassons' argument that any use of hollow road was an easement in gross, but stated that it found to the contrary, specifically, that it found "an easement appurtenant." Thus, the trial court held that that there was an easement by implication in favor of Ingram's use of hollow road over the Wassons' property.

As to an easement by necessity, the trial court also looked to *Cellco*, enumerating the following elements: (1) the titles to the tracts in question must have been held by one person; (2) the unity of title must have been severed by the conveyance of one of the tracts; and (3) the easement must be necessary for the owner of the dominant estate to use his land, with necessity existing at both the time of the severance and at the time of exercise of the easement. *Cellco*, 172 S.W.3d at 592. It found that the first two elements were clearly established. With respect to the third element, the trial court stated:

> Upon the proof, the Court finds that even if the Appellate Court held that the "hollow road" was not in existence at the time of the severance of title, the use of the "hollow road" would be necessary because Parcel 7 is landlocked . . . [and] the Court specifically finds that the proper location of the easement by necessity would be the present "hollow road" that is at issue in this case.

---

[14]The appellate record includes only one affidavit by Scottie Brewer. There is no explanation in the record as to why the trial court refers to more than one and the parties do not offer an explanation in their briefs. However, we note that Ingram does briefly reference a letter written by Mr. Brewer on June 25, 2007 attached to the map survey. The statement by the trial court may be a reference to this letter by Mr. Brewer. At any rate, no issue on appeal is raised regarding the trial court's reference to the "affidavits" of Mr. Brewer.

The trial court explained that, to make this finding, it relied on the affidavit of Scottie Brewer, to the effect that hollow road is the only roadway that would allow two-wheel drive vehicles to pass. The trial court also found no evidence of a reasonable, alternative route for Ingram to obtain access to and from his property other than via hollow road.

Two days later, on September 24, 2010, the trial court made the September 22, 2010 order final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.[15] Citing ***Brown v. John Roebuck & Assocs., Inc., et al.,*** No. M2008-02619-COA-R3-CV, 2009 WL 4878621, 2009 Tenn. App. LEXIS 853 (Tenn. Ct. App. Dec. 16, 2009), the trial court found that the September 22, 2010 order resolved a single, separable claim. The trial court noted that still pending was Ingram's claim for damages stemming from the Wassons' alleged interference with his easement to use hollow road. It found no just cause for delay in making the September 22, 2010 order final, explaining its reasoning as follows:

> A review of these factors [in ***Brown***] in the instant case leaves this Court to conclude that there are no just reasons for delay in this case. First, there are no additional unadjudicated claims between these parties other than the possible award of damages to the Plaintiff for the Defendants' interference with the Plaintiff's use of the easement. Second, the need for review in no way would be mooted by the Court resolving the potential damages claim remaining in this action. Third, the appellate court would not have to consider the same issue a second time. The Plaintiff has asserted no additional theories under which he would be entitled to the easement at issue in this case. Fourth, there is no counterclaim which could result in a set off against the judgment sought to be final in this case. Finally, as miscellaneous factors, this Court would note that if the Court of Appeals were to reverse the judgment in this case, there would be no need for a damages trial. Additionally, if the Court were to reverse this judgment, it could result in Plaintiff having to pursue other claims against new parties, resulting in additional litigation. To require the Plaintiff to litigate those potential claims, particularly now in light of the fact that they have obtained a favorable judgment from this Court, seems to be a substantial waste of judicial resources, time, and money on behalf of numerous parties.

---

[15]Rule 54.02 of the Tennessee Rules of Civil Procedure states in relevant part,

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. . . .

For all these reasons, the Court concludes that there is no just reason for delay in this case.

*See Brown*, 2009 WL 4878621, at \*8; 2009 Tenn. App. LEXIS 853, at \*22-23 (listing the factors relied on by the trial court).

On January 18, 2011, the trial court entered an approved Statement of the Evidence, pursuant to Rule 24(e) on the Tennessee Rules of Appellate Procedure. In pertinent part, the Statement of the Evidence provided:

> 1. The issue presented to the trial court on December 16, 2009 was limited strictly to whether or not a common law implied easement or an easement by necessity was created along an existing, long traveled "hollow road" when Vacation Lands of America, a common owner of both Plaintiff and Defendants, developed their property into various tracts and land locked their remaining property, including the Plaintiff's 100 acre tract by selling their only tract with road frontage prior to the sale of the 100 acre tract and failing to make any express reservation for access to the remaining tracts.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Wassons argue that the trial court erred in ruling that Ingram has a common law implied easement for access to Parcel 7 via hollow road which runs through Parcel 6, owned by the Wassons, and in finding a common law easement by necessity in favor of Ingram.

In a property dispute, this Court conducts a *de novo* review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact unless the evidence preponderates against those findings. *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006); *Fowler v. Wilbanks*, 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000). In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect. *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001).

"[I]t is the role of the trier of fact to evaluate all the evidence and assess the credibility of the witnesses." *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999) (citing *Norman v. Hoyt*, 667 S.W.2d 88, 91 (Tenn. Ct. App. 1983)). Ordinarily, where the trial judge observed the witnesses' in-person testimony, we accord "considerable deference" to those findings, because the trial court is best suited to making those credibility determinations. *Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425 (Tenn. 1989). In this case,

however, none of the witnesses gave live testimony in court; by agreement, all of the testimony was submitted by affidavit. The standard of review differs in such situations:

> [A]ppellate review of documentary proof, such as depositions or other forms of testimony presented to the trial court in a "cold" record, differs considerably. When reviewing documentary proof, all impressions of weight and credibility are drawn from the contents of the evidence and not from the appearance of witnesses and oral testimony at trial.

*Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Under these circumstances, the appellate court may make an independent assessment of the witnesses' credibility, in that the appellate court is "in just as good a position as the trial court to judge the credibility of witnesses who provided the proof." *Id.* at 783-84; *Elmore v. Travelers Ins. Co.*, 824 S.W.2d 541, 544 (Tenn. 1992).

## ANALYSIS

### Appellate Jurisdiction

Before turning to the issues raised on appeal, we note that, under Rule 13(b) of the Tennessee Rules of Appellate Procedure, this Court considered whether it has subject matter jurisdiction to hear this appeal. Lack of appellate jurisdiction cannot be waived. *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). This Court may consider its own jurisdiction *sua sponte*, even if it is not raised by the parties. *In re Estate of Boykin*, 295 S.W.3d 632, 635 (Tenn. Ct. App. 2008). "Unless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990). A final judgment resolves all of the issues in the case, "leaving nothing else for the trial court to do." *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). Rule 54.02 is an exception to this rule; it permits a trial court to direct the entry of a final order as to fewer than all of the claims or parties upon an express finding that there is no just reason for delay. *Newell d/b/a Solowell v. Exit/In, Inc., et al.*, No. M2003-00434-COA-R3-CV, 2004 WL 746747, at *1, 2004 Tenn. App. LEXIS 209, at *3-4 (Tenn. Ct. App. Apr. 7, 2004).

The determination of whether Rule 54.02 certification is proper is not always easy. This Court looks *de novo* at whether the judgment certified as final under Rule 54.02 is in fact as to a separate claim, appropriate for such certification. *See, i.e.*, *Christus Gardens, Inc. v. Baker, Donelson, Bearman, et al.*, No. M2007-01104-COA-R3-CV, 2008 WL 3833613, at *3-5 (Tenn. Ct. App. Aug. 15, 2008). This Court may conclude that Rule 54.02 certification

was improvidently granted where "the issue which the trial court declared final and appealable is inextricably linked with the remaining issues not yet decided." *Crane v. Sullivan*, No. 01A01-9207-CH-00287, 1993 WL 15154, at *2 (Tenn. Ct. App. Jan. 27, 1993). The trial court's finding under Rule 54.02 that there is no just cause for delay, and the ultimate certification as final, is reviewed under an abuse of discretion standard. *Newell*, 2004 WL 746747, at *2 (listing factors to be considered).

As noted by the trial court, remaining for resolution is Ingram's claim for damages against the Wassons for blocking his access to the road in question. In addition, we note that the Wassons asserted cross-claims against other neighbor defendants, asserting other means for Ingram to access his property. Certainly the resolution of the remaining claims pivots off the decision on the claim in this appeal, namely, an easement by implication or necessity to hollow road on the Wassons' property in favor of Ingram. However, our analysis of the claim at issue in this appeal is not affected by the trial court's resolution of the issues that remain pending in the trial court. Thus, the claim at issue in this appeal is not so "inextricably linked" with the claims remaining below that we are unable to resolve the issues on appeal. We agree with the trial court's conclusion that the claim on appeal was separable for the purpose of Rule 54.02 certification. In addition, we find no abuse of discretion by the trial court in finding no just cause for delay, and in its Rule 54.02 certification of the judgment as final. Therefore, we consider the issues raised in this appeal.

### Easement

"An easement is a right an owner has to some lawful use of the real property of another." *Cellco,* 172 S.W.3d at 588 (quoting *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996)). In Tennessee, an easement may be created in several ways, including: (1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain. *Pevear*, 924 S.W.2d at 116.

The trial court in this case found two types of easement, an "easement by implication" and an "easement by necessity." Both types of easement were addressed in this Court's decision in *Cellco*. *See Cellco*, 172 S.W.3d at 588-93. Differentiating between the two types of easements can be confusing.

Some clarification can be achieved by reference to the Restatement (Third) of Property ("The Restatement"). The Restatement states that the intent to create an easement, or servitude, "may be express or implied. No particular form of expression is required." Restatement (Third) of Prop.: Servitudes § 2.2 (2008). The terms or circumstances surrounding the conveyance of an interest in land may give rise to an implied easement or servitude. *Id.* at cmt (b).

In this case, both types of easement found by the trial court are, in fact, implied easements. *See* 25 Am. Jur. 2d, *Easements and Licenses* §§ 19-38 (2004) (types of easements created by implication); *see also **Cellco***, 172 S.W.3d at 591 (easement of necessity "is a type of easement by implication") (quoting ***Gowan v. Crawford***, 599 So. 2d 619, 621 (Ala. 1992)). The first type, referred to by the trial court and in ***Cellco*** as an "easement by implication," is termed in the Restatement as a "Servitude[] Implied From Prior Use." Restatement (Third) of Prop.: Servitudes § 2.12. *See also* Am. Jur. 2d, *Easements and Licenses* § 22 ("Easements Implied from Preexisting Uses: Generally"). The Restatement describes it as follows:

> Unless a contrary intent is expressed or implied, the circumstance that prior to a conveyance severing the ownership of land into two or more parts, a use was made of one part for the benefit of another, implies that a servitude was created to continue the prior use if, at the time of the severance, the parties had reasonable grounds to expect that the conveyance would not terminate the right to continue the prior use.
>
> The following factors tend to establish that the parties had reasonable grounds to expect that the conveyance would not terminate the right to continue the prior use:
> (1) the prior use was not merely temporary or casual, and
> (2) continuance of the prior use was reasonably necessary to enjoyment of the parcel, estate, or interest previously benefited by the use, and
> (3) existence of the prior use was apparent or known to the parties, . . .

Restatement (Third) of Prop.: Servitudes § 2.12. The Restatement explains that the rule regarding easements implied from prior use is based on the assumption that people intend to buy and sell land with the existing access arrangements, and it furthers the policy of protecting the reasonable expectations and the intent of parties to such transactions. *Id.* at cmt (a). ***Compare*** 25 Am. Jur. 2d *Easements and Licenses* §§ 25-29 (listing requisites for easement by implication from preexisting use), ***Cellco**,* 172 S.W.3d at 589 (listing elements for easement by implication).

The second type of easement found in this case by the trial court was referred to by the trial court and in ***Cellco*** as a common law easement by necessity or "way" of necessity. *See **Cellco***, 172 S.W.3d at 591-92. Similarly, the Restatement refers to this type of easement as a servitude or easement "created by necessity." *See* Restatement (Third) of Prop.: Servitudes § 2.15 ("Servitudes Created By Necessity"); *see also* 25 Am. Jur. 2d *Easements*

*and Licenses* § 30 ("Ways of Necessity").  The Restatement describes this type of easement as follows:

> A conveyance that would otherwise deprive the land conveyed to the grantee, or land retained by the grantor, of rights necessary to reasonable enjoyment of the land implies the creation of a servitude granting or reserving such rights, unless the language or circumstances of the conveyance clearly indicate that the parties intended to deprive the property of those rights.

Restatement (Third) of Prop.:  Servitudes § 2.15; *see also Cellco*, 172 S.W.3d at 592 (listing prerequisites for a finding of an easement by necessity).  The Restatement explains that the rule on an easement created by necessity is based in part on the presumed intent of the parties to convey, or retain, all rights necessary to permit the enjoyment of the subject property, including the right of access.  Restatement (Third) of Prop.:  Servitudes § 2.15 cmt (a).  It is also based on public policy favoring utilization of land and the avoidance of the cost of requiring a landlocked property owner to acquire access rights from a neighboring landowner.  *Id.*; *see also Cellco*, 172 S.W.3d at 591-92.

As can be seen, there is considerable overlap between an easement implied from prior use and an easement created by necessity.[16]  Both are implied, both arise from a conveyance, both hinge on a finding of necessity.  Hence, the confusion.  To distinguish between them, an easement created by necessity "does not depend on a prior use" and the fact that any prior use "is permissive is irrelevant to the question [of] whether [an] easement [created by] necessity will be deemed to exist."  25 Am. Jur. 2d *Easements and Licenses* § 32.  Moreover, an easement created by necessity "need not be in existence at the time of the conveyance" and may allow for a route of access where one previously did not exist.  *Id.*; *see Cellco*, 172 S.W.3d at 591.

With these parameters in mind, we consider the issues raised on appeal.

### *Easement Implied From Prior Use*

As the first issue raised on appeal, the Wassons assert only that "the trial court erred in ruling that [Ingram] has a common law implied easement to access" Parcel 7.  Such an issue raised on appeal gives the appellate court little insight into the argument the Wassons seek to make.  The argument portion of the Wassons' brief on this issue asserts that VLA "created an express access easement by reservation" in its deed of Parcel 12 to Mr. and Mrs. Jones.

---

[16]To help distinguish between the two types of implied easement, we will utilize the terminology used in the Restatement (Third) of Property.

-15-

Specifically, the Wassons rely on language found in the 1971 deed from VLA to Alvin Jones conveying Parcel 12 and later also found in three deeds conveying what is today Parcel 7 to Hart and Burns. The language on which the Wassons rely provides: "This conveyance is subject to a road easement of 50 feet on the East boundary line of the above described property." The Wassons argue that "it was VLA's intention for the 50 foot road easement to continue from Parcel 12, across the [Wassons'] Parcel 6 tracts to and through what today is [Ingram's] Parcel 7." They rely on the testimony of Mr. Garland. The thrust of the Wassons' argument is somewhat unclear, but they appear to argue that, because of the express road easement for "ridge road" along the eastern boundary of their Parcel 6, Ingram's Parcel 7 is not in fact landlocked, so the element of necessity for the easement implied by prior use was not proven.

As relied upon by the Wassons, Mr. Garland's affidavit stated that VLA "utilized an abundance of caution in providing this road right of way easement to assure a connection to [Ingram's] and [the Wassons'] parcels to the south of [Ingram's] Parcel 7 in case some of the old ridge road bed lay on what is now, the Heartwood Forestland Property." The trial court acknowledged the affidavit testimony by Mr. Garland, and stated explicitly that it gave greater weight to the testimony of other witnesses, including the surveyor relied upon by Ingram, Scottie Brewer. In his affidavit, Mr. Brewer states that he "looked for express easements for access . . . [and] did not find any express easement granted to Ingram or his predecessors in title that would allow him to gain access from any adjoining property owner and to the . . . Parcel 7 which is, otherwise landlocked." From our review of the record, the map, as presented, shows several large trees obstructing the alleged ridge road roadway and Mr. Brewer's affidavit asserts that four wheel drive or an ATV would be required to access ridge road along the eastern boundary of the Wassons' property. From our careful review of the record as a whole, we find no errors in the trial court's decision to credit the testimony of Mr. Brewer over that of Mr. Garland. Consequently, we find no error in the trial court's finding that it could not "find any express easement or any type of easement which would prove that [Ingram's] land was anything other than landlocked."

In the alternative, as to the trial court's finding of an easement implied from prior use, the Wassons argue that the required elements were not proven. They rely on the elements recited in *Cello* that must be established in order to find an easement implied from prior use:

> (1) A separation of the title; (2) Necessity that, before the separation takes place, the use which gives rise to the easement shall have been long established and obvious or manifest as to show that it was meant to be permanent; and (3) Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained. Another essential is sometimes

added to these -- namely, that the servitude be continuous, as distinguished from temporary or occassional [sic].

*Cellco*, 172 S.W.3d at 589; *Haun v. Haun,* No. E2004-01895-COA-R3-CV, 2005 WL 990566, at *4; 2005 Tenn. App. LEXIS 252, at *9-10 (Tenn. Ct. App. Apr. 28, 2005); *Johnson v. Headrick*, 237 S.W.2d 567, 570 (Tenn. Ct. App. 1948); *Allison v. Allison*, 193 S.W.2d 476, 477 (Tenn. Ct. App. 1945).

The Wassons do not dispute the first element, separation of title, to their parcels by virtue of the division of a larger tract, once owned by VLA. The Wassons argue that Ingram failed to prove the second element, that prior to the separation, the use at issue was "long established" and "manifest as to show that it was meant to be permanent." *Cellco*, 172 S.W.3d at 589. The Wassons contend that VLA did not own the property long enough to satisfy this requirement, and that the evidence did not show that the prior use was "manifest" or "obvious."

To evaluate the trial court's finding on this element, we look at the evidence upon which it relied. The trial court stated that it gave "greater weight" to the affidavits of real estate agent Jonathan Mark Mathis. Mr. Mathis' affidavit stated that, at the time of the severance, he and his father were the real estate agents acting on VLA's behalf. Mathis asserted that ever since he became acquainted with the property and began showing it for VLA, he had never known of any access other than hollow road. Mr. Mathis said that each and every time that he showed the property for sale, his access to it was along hollow road. Mr. Mathis claimed that "[i]t was [VLA's] obvious intent that the Hollow Road be the access for all tracts as we marketed them for sale . . . . there was no plat of the development filed but the hollow road was the access we and [VLA] owners used to develop and show each tract."

Mr. Mathis' affidavit testimony was indirectly corroborated by some of the affidavits filed by Ingram in this cause. For example, neighbor Wayne Leeper stated: "At the time [VLA] purchased the entire 250 acre tract, the hollow road used by Lee Ingram was the only access available and used for the back tract which Lee Ingram currently owns." Perry County resident Ray Hinson stated: "This hollow road which is currently being used, and was the same one used in 1941, was also the road that accessed the property when [VLA] purchased the property. . . ." Another Perry County resident, Ellis McKnight, stated that he was "not familiar with any road which was used to gain access to [Parcel 7] other than the current road [Ingram] uses in this hollow."

We find that the trial court did not err in crediting the testimony in these affidavits. We also find that this is sufficient proof for the trial court to find that the second element was established by a preponderance of the evidence.

-17-

The third element of an easement implied from prior use requires that the continuance of the prior use be reasonably necessary to the beneficial enjoyment of the land granted or retained. *Cellco*, 172 S.W.3d at 592; *Fowler*, 48 S.W.3d at 741. As the Wassons concede, when a conveyance results in the dominant parcel being landlocked, this satisfies the "reasonably necessary" requirement. *Cellco*, 172 S.W.3d 592; *Fowler*, 48 S.W.3d at 741 (affirming the trial court's holding that landlocked property rendered the use of a gravel access road "reasonably necessary" to the enjoyment of a plaintiffs' land). The Wassons contend that the trial court erred in declining to find that the alternate modes of access advocated by the Wassons meant that Ingram was not in fact landlocked. Specifically, the Wassons point to the alleged ridge road along with the eastern boundary of their property. The trial court below stated that, in finding that Ingram's property was landlocked, it carefully reviewed the deeds and the affidavits of Scottie Brewer. Mr. Brewer surveyed the property, and stated in his affidavit that he "did not find any roadbed leading from the ridge road along the properties of Heartwood Forestland that leads down the steep grade into [Parcel 7]." Mr. Brewer refers to Ingram's parcel as landlocked, and states that there may have been many other roadbeds, but the only one accessible with a two wheel drive vehicle is in fact hollow road. We note that a previous trial judge assigned to this matter viewed the property in question, concluded that Ingram "does not have any other clear, easy or acceptable present access to [Parcel 7] other than the hollow road," and continued the temporary injunction based on that observation. From our review of the proof, we find no error in the trial court's finding that the element of reasonable necessity was proven by a preponderance of the evidence.[17]

Consequently, based on our careful review of the record as a whole, we agree with the trial court's finding of an easement implied from prior use in favor of Ingram as to hollow road.

### Easement Created by Necessity

The Wassons recognize the different elements required to prove an easement created by necessity, and argue that the trial court erred in finding such an easement. Again, the Wassons' argument is not entirely clear, but they appear to contend that the element of necessity was not shown, for many of the same reasons addressed above. The Wassons point

---

[17]We note that *Cellco* seemed to allude to a fourth element requiring the easement be continuous as distinguished from temporary or occasional. *See Cellco*, 172 S.W.3d at 589. However, this appears to be subsumed within the other three long-established elements. *Id.* (requiring that the easement be "long established" and "obvious or manifest as to show it was meant to be permanent"); *see also* Restatement (Third) of Prop.: Servitudes § 2.12 (listing three factors to establish easement implied from prior use); 25 Am. Jur. 2d Easements and Licenses §§ 25-29. Therefore, we do not address it separately.

to an exhibit in the record on a 2009 transaction for which Mr. Brewer acted as a surveyor and, in doing so, apparently referred to the "ridge road" at issue in this case. They note that the deeds to the properties at issue do not mention hollow road. The Wassons seek to minimize or discredit the affidavit testimony of Ellis McKnight, Ray Hinson, and Wayne Leeper, submitted by Ingram. Prior to the acquisition of the overall tract by VLA, the Wassons argue, there was "only an easement in gross" as to hollow road. They again point to the language in some of the deeds referring to a 50 foot road easement on the eastern boundary, namely, the alleged ridge road.

As noted above, if a parcel is landlocked, the element of reasonable necessity is typically met. *Peach v. Medlin*, No. W2003-02152-COA-R3-CV, 2004 WL 948481, at *12; 2004 Tenn. App. LEXIS 302, at *34 (Tenn. Ct. App. Apr. 28, 2004)("On a conveyance which leaves the land conveyed or retained surrounded by the land of the grantor or grantee and third persons, a way of necessity is implied in favor of the landlocked parcel."). We have reviewed the evidence to which the Wassons point, the reference to Mr. Brewer's survey, the language in the deeds, and the evidence as to ridge road. We have also reviewed the evidence on which the trial court relied in finding reasonable necessity, including but not limited to the affidavit of Mr. Brewer. For the reasons outlined in our analysis above of an easement implied from prior use, in this analysis of an easement created by necessity, we find that the element of reasonable necessity was proven by a preponderance of the evidence. For those reasons, we conclude that the trial court did not err in finding an easement created by necessity as to hollow road in favor of Ingram.

### CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are assessed against Appellants Rebecca and Randy Wasson and their surety, for which execution may issue if necessary.

_____

HOLLY M. KIRBY, JUDGE