IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 1, 2024

## KATHLEEN NELL SNAPP v. TIMOTHY ALVA SNAPP

**Appeal from the Chancery Court for Sullivan County**
**No. 19CV18632      Katherine Leigh Priester, Chancellor**

———————————————————

**No. E2023-00251-COA-R3-CV**

———————————————————

In this divorce appeal, the husband challenges the trial court's classification of real estate as marital property and its ruling regarding dissipation of the marital estate. Following a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J. W.S., and JEFFERY USMAN, J., joined.

Julie Canter, Kingsport, Tennessee, for the appellant, Timothy Alva Snapp.

Gregory W. Francisco, Kingsport, Tennessee, for the appellee, Kathleen Nell Snapp.

## OPINION

### I. BACKGROUND

The parties in this matter were married on April 6, 1996, at which time the husband, Timothy Alva Snapp ("Husband"), and the wife, Kathleen Nell Snapp ("Wife"), were approximately 39 years of age. The marriage lasted approximately 26 years. The Complaint for Divorce was filed by Wife on October 1, 2019, citing irreconcilable differences coupled with inappropriate marital conduct.

At the time of the parties' marriage, Husband had been employed by Eastman Chemical Company for 16 years. Wife had been employed by Honeywell as a graphic designer. She worked for various corporations doing graphic arts work upon her move to

Tennessee and marriage to Husband. In 1999, Wife began doing freelance design, continuing to work in the graphic arts field. Wife testified that whenever she was not working, she was at home as a housewife and wife to Husband. She claimed to perform the bulk of the cooking, cleaning, household maintenance, and yard work, including the mowing.

Prior to the marriage, Husband lived in a double wide mobile home on the property at issue here. Husband testified:

> Initially I brought [the property] in my name, alone. I was making payments on it to the original land owner. And I got behind and was about to lose it. And I had it about half paid off. My dad paid the other half off for half interest.

Husband's father ("Father") was added to the deed in return for the $26,500 payment. Wife believed the property to be Husband's property, as Father had a separate tract of land. The parties continued to reside in the mobile home until they began discussing building a cabin on the property. Wife testified that they walked the property together to pick a spot on which to build and began clearing it. According to Wife, the parties picked the floor plan together and drew it out on a computer program; they worked together to design the home the way they wanted it. Wife stated that the parties hired different contractors known to Husband to build the house. During the construction process, Wife claimed that the parties, working together, picked out colors, flooring, appliances, and cabinets. She asserted that she worked on installing the insulation and outlet covers; the couple did all the insulation themselves. Wife related that together they picked out and bought the exterior lighting; she took the lights apart and painted them to all match. Wife also testified that she picked out the bathroom tile. At times when Husband was at work, Wife claimed to keep the site cleaned up as construction progressed. Wife noted that the parties would save up money and use their credit cards toward the construction costs, the process of which of took approximately three years.

Wife observed that the parties also built a barn on the property. She acknowledged that Husband performed most of that work. Wife related that they paid for the barn in the same manner as the house. She opined at trial that, in her opinion, the property was worth $650,000.

Wife testified that throughout most of the marriage, the parties had joint savings and checking accounts. She believed that all of her income, until about 2016 or 2017, went into the same accounts as Husband's income, from which the parties' bills were paid.

Husband's brother, Thomas Snapp ("Brother"), testified under oath that he was a retired attorney. He related that he visited his parents during the construction of the house about once a month. He claimed that Father built the house for the couple. He recalled

accompanying Father to a local 84 Lumber store to purchase lumber and siding for the home construction. Brother admitted on cross examination, however, that his law license had been suspended for trust violations. Despite the fact that both brothers have joint power of attorney over Father, he denied having access to Father's records. Brother produced no records of Father buying anything for the house and had no copies of contracts with the framers, plumber, or electrician. He acknowledged that neither he nor Father performed any labor on the home. Brother related that Father is now cognitively impaired.

Husband testified that Wife moved into the mobile home with him in the winter of 1995, and construction of the house began in 1998. He acknowledged that the parties were married when both the house and the barn were built and that the home was where he and Wife lived. Husband claimed, however, that he alone designed the house from the start using a home architect program. He contended that Wife did not participate in the design; rather, she "watched over" his efforts. Husband admitted that Wife put insulation in the walls of the home and painted all of the outside lighting fixtures. He testified that Father "funded the house," while Husband "did quite a bit of the work…." He asserted that Father "acted as the general contractor" but admitted, however, to "honestly hav[ing] no idea" how Father paid the subcontractors on the project. Husband acknowledged that he was unable "to find any receipts" from the house construction. According to Husband, "the arrangement [with Father] was that I would pay the property taxes on the entire farm, not just the house, and the insurance on the farm and the house." He observed that those payments were treated as rent. Husband further acknowledged, however, that the taxes and insurance on the home were paid from the parties' joint accounts from 1996 forward.

Husband retired when he was 55 years old with approximately $500,000 in his individual retirement account ("IRA"). He admitted that his post-retirement income was around $3,979.23 per month. He asserted that the parties used the money in his IRA over the years at a rate of $4,000 per month or $48,000 per year. During the pendency of the divorce, Husband continued to use the funds in the IRA. He acknowledged that $90,000 of his IRA was distributed and consumed; he presented no records to explain the use of the funds.

After the final hearing on September 1, 2022, the trial court found that the property at issue was marital property. The court specifically credited Wife's testimony relative to her participation in the planning and work on the house constructed during the marriage and found that Wife substantially contributed to the maintenance and appreciation of the property. Moreover, the trial court determined that Wife had rebutted Husband's assertion that Father contributed financially to the construction of the parties' residence, finding no competent corroborating evidence to support Husband's claims. The court found that Husband's assertions were contradicted by Wife's testimony that the parties used credit cards and paid for items for the house over a period of years. The trial court made an equitable division of the parties' marital estate, and, in particular, awarded to Wife a one-half interest in the value of the marital residence. Husband filed a timely appeal.

## II. ISSUES

We restate the issues before us as follows:

A. Whether the trial court properly held that the property at issue was transmuted from separate property to marital property.

B. Whether the trial court correctly determined that Husband dissipated the marital estate during the pendency of the divorce.

## III. STANDARD OF REVIEW

We review this matter *de novo* upon the record with a presumption of correctness regarding the trial court's findings of fact, unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d); *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014); *Cannon v. Loudon Cnty*, 199 S.W.3d 239, 241 (Tenn. Ct. App. 2005). For the evidence to preponderate against a particular finding of fact, the evidence must support another finding of fact with greater convincing effect. *Ingram v. Wasson*, 379 S.W.3d 227, 237 (Tenn. Ct. App. 2011). A trial court's conclusions of law are subject to a *de novo* review without a presumption of correctness. *Kelly*, 445 S.W.3d at 692. The court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

During a divorce proceeding, the classification of whether property is either marital or separate property is a question of fact to be determined by the trial court upon consideration of all relevant circumstances. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009); *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005). The trial court has broad discretion when classifying and dividing the marital estate, and its findings are entitled to great weight on appeal. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002). Unless a trial court's decision concerning the classification or division of property is contrary to the preponderance of the evidence or is based on an error in law, courts will not interfere with the trial court's decision on appeal. *Id.*

## IV. DISCUSSION

### A.

Because Tennessee is a "dual property" state, a trial court must first identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. *Melvin v. Johnson-Melvin*, No. M2004-02106-COA-R3-CV, 2006 WL 1132042, at *10 (Tenn. Ct. App. Apr. 27, 2006). The next step is

to value the marital property. *Id.* The final step is to equitably divide the marital property in accordance with the factors provided in Tennessee Code Annotated section 36-4-121(c), because "following this approach generally yields consistent and equitable results." *Id.*

Whether an asset is separate property or marital property is a question of fact. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Separate property is not subject to division; it is defined in part as:

> All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) … [and] [p]roperty acquired by a spouse at any time by gift, bequest, devise or descent [….]

Tenn. Code Ann. § 36-4-121(b)(4).

Generally, marital property is defined by Tennessee Code Annotated section 36-4-121(b)(2)(A) as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce [….]" "[S]eparate property may be deemed marital by operation of law under theories of commingling or transmutation." *Snodgrass*, 295 S.W.3d at 247 (citing *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002)). Separate property becomes marital property by commingling if inextricably mingled with marital property or with the separate property of the other spouse. *Snodgrass*, 295 S.W.3d at 256. Transmutation results when separate property is used in a manner as to give evidence that it becomes marital property. *Id.* A presumption that one spouse has given a gift to the marital estate "can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate." *Langschmidt v. Langschmidt*, 81 S.W.3d 747.

Four of the most common factors used to determine whether the real property has been transmuted from separate to marital property are as follows:

> (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property.

*Luplow v. Luplow*, 450 S.W.3d 105, 114 (Tenn. Ct. App. 2014) (quoting *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *5 (Tenn. Ct. App. Sept. 1, 2006)). These factors, however, are not exclusive. *Lewis v. Lewis*, No. W2019-00542-COA-R3-CV, 2020 WL 4668091, at *4 (Tenn. Ct. App. Aug. 11, 2020) (citing *Fox*, 2006 WL 2535407, at *5). The use of marital funds to pay off or improve the property have also been

deemed relevant. *Id*. (citing *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007)).

With regard to the first factor, the parties began construction of the home in 1998 and completed it after almost three years. The property was used as the family residence for approximately 20 years, until the couple separated in 2019.

Relative to the second factor, as credited by the trial court, Wife cooked, cleaned, tended to the landscaping and mowed, changed the filters, and generally maintained the parties' home. The trial court found that Wife made significant contributions to the preservation and appreciation of the property. The term "substantial contribution" is defined to include, but is not limited to "the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine[.]" Tenn. Code Ann. § 36-4-121(b)(2)(D).

As to the third factor, title ownership of the property, the property is titled to Husband and Father. However, title alone is not dispositive of the intent of the parties in the use of the property; "whether a particular asset is marital or separate depends on the conduct of the parties, not the record title of the asset. An asset separately owned by one spouse will be classified as marital property if the parties themselves treated it as marital property." *Fox*, 2006 WL 2535407, at *5. As we discussed in *Booker v. Booker*, No. E2022-01228-COA-R3-CV, 2023 WL 7016215, at *10 (Tenn. Ct. App. Oct. 24, 2023), "[T]ransmutation often occurs when a spouse purchases real property prior to the marriage and the parties then use the property as the marital residence and undertake significant improvements to the property during the marriage." *See Dover v. Dover*, No. E2019-01891-COA-R3-CV, 2020 WL 7224368, at *5 (Tenn. Ct. App. Dec. 8, 2020) (collecting cases).

Upon consideration of the fourth factor, the trial court determined that the parties used their credit cards along with periodic accumulation of savings to fund their joint efforts to construct the home on the property at issue.

In the present case, the record supports the trial court's determination that Wife made significant contributions to the maintenance and improvements to the property. She provided physical labor, including decorating, painting, and insulating the house they constructed. Wife maintained employment throughout the majority of the marriage, and all of her income was deposited into the parties' joint account, from which the taxes, insurance, and normal household expenses were paid. Additionally, Wife contributed to the payment of the credit card debt that arose out of the construction of the marital home in which she lived for over 20 years. Furthermore, Wife contributed as a homemaker. The state's policy is to recognize "the equal dignity and importance of the contributions to the family of the homemaker and the breadwinner." *Shackelford v. Shackelford*, No. M2018-01170-COA-R3-CV, 2019 WL 2151684, at *12 (Tenn. Ct. App. May 16, 2019); Tenn.

Code Ann. § 36-4-121(c)(5)(A). The trial court's determination that the property owned by Husband prior to the marriage had been transmuted to marital property must be affirmed.

**B.**

Husband argues that he is a retired person requiring the money from his IRA to survive and maintain his lifestyle. He claims that Wife did not file a pleading with the court raising the issue of dissipation or allegations of contempt. He asserts that the court erred in finding that the funds in the IRA were dissipated and in awarding the remaining monies in the account to Wife.

"Trial courts have wide latitude in fashioning an equitable division of marital property." *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994) (citing *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983)). Once marital property has been valued, the trial court is to divide it in an equitable manner "without regard to marital fault in proportions as the court deems just …." Tenn. Code Ann. § 36-4-121(a)(1)(A). A division of marital property does not require that it be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). A trial court's decision must be guided by the factors in Tennessee Code Annotated section 36-4-121(c), but the decision is not a mechanical one and is not rendered inequitable because it is not precisely equal, or because both parties did not receive a share of each piece of property. *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998).

As we noted in *Booker*:

Whether a party has dissipated assets is relevant to the equitable distribution of property:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

* * *

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a

- 7 -

purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed[.]

Tenn. Code Ann. § 36-4-121(c)(5).

Regarding dissipation of assets, our Supreme Court has previously explained:

> Whether dissipation has occurred depends on the facts of the particular case. 24 Am. Jur. 2d Divorce and Separation § 526 (2009). The party alleging dissipation carries the initial burden of production and the burden of persuasion at trial. *Burden v. Burden*, 250 S.W.3d 899, 919 (Tenn. Ct. App. 2007), *perm. to app. denied*, (Tenn. Feb. 25, 2008). Dissipation of marital property occurs when one spouse wastes marital property and thereby reduces the marital property available for equitable distribution. *See Altman v. Altman*, 181 S.W.3d 676, 681–82 (Tenn. Ct. App. 2005), *perm. to app. denied*, (Tenn. Oct. 31, 2005). Dissipation "typically refers to the use of funds after a marriage is irretrievably broken," *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006), is made for a purpose unrelated to the marriage, and is often intended to "hide, deplete, or divert" marital property. *Altman*, 181 S.W.3d at 681–82. In determining whether dissipation has occurred, trial courts must distinguish between dissipation and discretionary spending. *Burden*, 250 S.W.3d at 919–20; 24 Am. Jur. 2d Divorce and Separation § 526 (2009). Discretionary spending might be ill-advised, but unlike dissipation, discretionary spending is typical of the parties' expenditures throughout the course of the marriage. *Burden*, 250 S.W.3d at 919–20.

*Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. 2010). Whether dissipation has occurred is a fact-specific analysis, but the most common factors to consider include:

> (1) whether the expenditure benefitted the marriage or was made for a purpose entirely unrelated to the marriage; (2) whether the expenditure or transaction occurred when the parties were experiencing marital difficulties or were contemplating divorce; (3) whether the expenditure was excessive or de minimis; and (4) whether the dissipating party intended to hide, deplete, or divert a marital asset.

*Altman*, 181 S.W.3d at 682 (footnote omitted) (citing *Halkiades v. Halkiades*, No. W2004-00226-COA-R3-CV, 2004 WL 3021092, at \*4 (Tenn. Ct. App. Dec. 29, 2004)).

*Booker*, 2023 WL 7016215, at \*13.

The trial court in this case entered a restraining order, pursuant to Tennessee Code Annotated section 36-4-106(c), containing language restraining the disposal of marital property without the consent of the other party or an order of the court. The restraining order additionally provided that "each party shall maintain records of all expenditures...." Wife asserted that Husband purchased a 1999 Corvette after she filed for divorce. The trial court found that the purchase of the vehicle was "in direct violation of the court's restraining order." Additionally, the court determined that Husband sold a horse trailer constituting marital property "during the pendency of the divorce for $4,000, which … was a direct violation of the statutory restraining order." The court further concluded that "after the divorce was filed … again, in direct violation of the statutory restraining order," Husband withdrew $4000 per month out of the retirement account. The court noted as follows:

> As of September 9, 2022, the balance in that account was only $21,283.03. Therefore, based upon Husband's dissipation of that asset in direct violation of the restraining order, and in an effort to make an equitable distribution of the remaining funds, the Court finds that the balance of that account is marital property and awards the full balance to the wife.

The record in this case reveals that during the pendency of the divorce, Husband's monthly income, excluding his IRA distributions, totaled $3979.23 per month; his monthly expenses from his sworn budget totaled $2044 per month over and above that income. Husband admitted that he took the additional $90,000 in distributions from the IRA account. He acknowledged the restraining order but provided no records documenting the expenditures, nor was he able to offer any credible explanation for the whereabouts or the use of the funds. Accordingly, we find that the evidence of record does not preponderate against the findings of the trial court regarding dissipation of marital assets in this case. The court's rulings on the issue must be affirmed.

## V. CONCLUSION

For the reasons stated above, we affirm the decision of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Timothy Alva Snapp.

_____
JOHN W. MCCLARTY, JUDGE