IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 8, 2019 Session

## PHILLIP ISAACS, JR., ET AL. v. BRENNON FITZPATRICK, ET AL.

Appeal from the Chancery Court for Perry County
No. 5139     Deanna B. Johnson, Judge
_____

### No. M2018-01863-COA-R3-CV
_____

This appeal involves a dispute between neighboring landowners over the use of a driveway that crosses the land of a third neighbor. Two of these landowners were previously involved in a separate lawsuit that resulted in an agreed declaratory judgment establishing an easement for one landowner at the location of the driveway. In the case at bar, the trial court found that the prior declaratory judgment is not binding on the neighboring landowners who were not parties to that earlier proceeding. After a two-day bench trial and on-site view of the premises, the trial court found that these neighbors had established an easement implied from prior use, and alternatively, an easement implied by necessity, enabling them to use the driveway as well. The other landowner, who was granted an easement by the earlier agreed order, has appealed, insisting that he has the exclusive right to use the driveway. For the following reasons, we affirm the decision of the chancery court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Sean R. Aiello, Franklin, Tennessee, for the appellant, Brennon Fitzpatrick.

Douglas Thompson Bates, III, Centerville, Tennessee, for the appellees, Phillip Isaacs and Vanessa Isaacs.

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

This case involves parcels of property that border the Buffalo River in Perry County, Tennessee. All of these parcels were originally part of a large farm owned by the Cunningham family since at least the 1930's. The Cunningham family used an old farm road to drive their cattle and move farm equipment through the farm. At some point, this old farm road became commonly known as "Cunningham Lane."

Betty Stofel grew up on the farm and eventually acquired much of the land from her mother, Mable Cunningham. In 1999, Ms. Stofel subdivided the farm and sold one of the vacant lots along the Buffalo River to Mr. and Mrs. Ronald Smith. The Smiths' property had some road frontage along a gravel road, but the portion of their property abutting the road was very steep, and there was no driveway running from the gravel road directly onto their property. Instead, an old roadbed extended from the Smiths' property back across land retained by Ms. Stofel, where it connected to the same gravel road. According to Mr. Smith, this old roadbed had chert rock on it and appeared to have existed for a long time.[1] Before the sale of the property was completed, Mr. Smith was told by Ms. Stofel that this old roadway connecting their property to the gravel road would be their driveway. Notably, Ms. Stofel told Mr. Smith, "Where the chert is, is the driveway, the easement." The Smiths' deed from Ms. Stofel expressly provided that the property would be "accessed by a 30 foot in width right-of-way from a 50 foot in width right-of-way north of Cunningham Ridge Road," and Mr. Smith believed that this language encompassed his driveway easement. Years later, at least by the time of trial, the parties discovered that the language in the deed actually provided for a means of accessing the river, by going farther down the main gravel road and through the back part of the property and ending at the river. However, at the time of the conveyance, the Smiths believed that the language in the deed provided for an easement at the driveway.

Mr. and Mrs. Smith bought a cabin and placed it on the property such that the driveway leads directly to it. The cabin was not the Smiths' primary residence, but they traveled to the cabin every weekend and sometimes for week-long vacations. During this time, Ms. Stofel paid for maintenance of the main gravel road but not maintenance of the separate driveway to the Smiths' cabin. Ms. Stofel repeatedly told the Smiths that it was their driveway and that they were responsible for the cost of maintaining it. The Smiths hired someone to bring in a dump truck with seventeen tons of stone to improve the driveway and adjacent ditch. Every spring, the Smiths had to add some additional gravel due to the rains washing the driveway and forming ruts.

The property adjacent to the Smiths' property was apparently a vacant lot with the exception of a fence running along the property line. There was an old gate at the corner of the property line fence near the driveway that the Smiths used, but the gate did not

---

[1] Over the years, the parties have taken differing positions on whether "Cunningham Lane" continues on with the main gravel road or refers to the separate old roadbed leading off the gravel road and onto the Smiths' property.

touch the driveway. Grass separated the driveway and the old gate. Despite the existence of the gate, from 1999 to 2007, no one used the driveway except for the Smiths.

In 2007, the Smiths sold the property to Mr. and Mrs. Isaacs. Mr. Smith admittedly told Mr. and Mrs. Isaacs that the driveway "was their drive." Like the Smiths, Mr. and Mrs. Isaacs used the cabin as a weekend home and traveled to it on a weekly basis. Mrs. Isaacs is an avid kayaker and frequently pulls a kayak trailer to the cabin. Mr. and Mrs. Isaacs added a "drop-down" drive on the very steep slope of their property abutting the gravel road such that the drop-down drive runs from the gravel road and connects to their main driveway "to make a loop." This enables them to pull their kayak trailer down the drop-down drive onto the main driveway so that they can exit out their main driveway when they leave. Without the loop, there is not enough space on the property to pull in the driveway and turn around with the trailer. However, according to Ms. Isaacs, the drop-down drive is simply too steep to use for exiting the property unless one has a four-wheel drive vehicle. Instead, Mr. and Mrs. Isaacs use the main driveway to exit the property and get back to the gravel road.

Mr. and Mrs. Isaacs used and maintained the driveway regularly and without incident from 2007 until 2015. In 2015, Brennon Fitzpatrick bought the adjacent three-acre lot next to Mr. and Mrs. Isaacs, where the fence and the old gate were located. Mr. Fitzpatrick had purchased a two-acre lot past the adjacent three-acre lot several years earlier, and he had a cabin on the two-acre lot. Mr. Fitzpatrick wanted the contiguous three-acre lot next to the property owned by Mr. and Mrs. Isaacs to further complement his existing lot. Mr. Fitzpatrick was aware of the fact that Mr. and Mrs. Isaacs regularly used the driveway across Ms. Stofel's land to access their cabin. However, Mr. Fitzpatrick believed that he had a right to utilize the same driveway to access the adjacent three-acre lot at the location of the old gate. The deed to his property, which was originally sold by the Cunninghams to his predecessors in title in 1974, included a "perpetual right-of-way easement over an existing road known as Cunningham Lane for the purpose of ingress and egress to the property herein conveyed."

After he purchased the adjacent lot, Mr. Fitzpatrick took a bulldozer onto the driveway, which led to a heated exchange with Ms. Stofel and Mr. and Mrs. Isaacs. Ms. Stofel told Mr. Fitzpatrick that the driveway belonged to her and that she was not going to allow him to use it. Mr. and Mrs. Isaacs also told Mr. Fitzpatrick that they had always used the driveway. Thereafter, Mr. and Mrs. Isaacs continued to use the driveway without incident for several months.

On June 8, 2016, Mr. Fitzpatrick filed suit against Ms. Stofel in the chancery court of Perry County. The complaint recited that Mr. Fitzpatrick's predecessor in title was granted an easement over an existing road known as Cunningham Lane for the purpose of ingress and egress to the property. Mr. Fitzpatrick acknowledged his belief that Cunningham Lane, in its present form, does not touch the tract he now owns, but Mr.

Fitzpatrick alleged that Ms. Stofel had "created a driveway off of Cunningham Lane which ends at an old wooden gate on Fitzpatrick's property and appears to have been designed to allow access onto Fitzpatrick's property through this gate." The complaint asked the court to "declare Fitzpatrick's right to access his property over Cunningham Lane and/or the driveway." Mr. and Mrs. Isaacs were not named as defendants or mentioned in the complaint.

On July 11, 2016, Mr. Fitzpatrick filed a motion for default judgment, asserting that Ms. Stofel had failed to file an answer to the June 8 complaint. The hearing on the motion for default judgment was set for August 8, 2016. On that date, however, the trial court entered an agreed order with the following relevant provisions:

### ORDER TO ESTABLISH A PERPETUAL RIGHT-OF-WAY EASEMENT

It appears to the Court as evidenced by the signatures of Counsel for the parties that an agreement has been reached to establish an exclusive perpetual right-of-way easement for ingress and egress to benefit the Plaintiff, and all persons who may subsequently take title to Plaintiff's tract of real property described herein. The perpetual right-of-way easement shall be exclusive to Plaintiff, his heirs, assigns and successors.

. . . .

There is an existing driveway approximately twenty five (25) feet in width and one hundred fifty (150) feet in length which runs off of Cunningham Lane across Stofel's property to the southeastern boundary of Plaintiff's property. Said driveway is shown on the attached Exhibit A.

By this Order, Betty Stofel hereby conveys to Brennon Fitzpatrick and his heirs and assigns, an exclusive perpetual right-of-way easement over and along the existing driveway being some twenty five (25) feet in width and one hundred fifty (150) feet in length which leaves Cunningham Lane and extends to the southeastern boundary of Plaintiff[']s property. . . .

The following drawing was incorporated by reference, depicting the blackened "Easement Area" with an arrow leading to it:



On the same day the agreed order was entered, Mr. Fitzpatrick went to the cabin owned by Mr. and Mrs. Isaacs and told them that he had obtained "exclusive" rights to the driveway and that they would only be permitted to use it with his permission. Mr. and Mrs. Isaacs contacted Ms. Stofel, and she informed them that she did not intend to grant Mr. Fitzpatrick exclusive rights to the driveway but meant for them to share access to it.

On September 2, 2016, Ms. Stofel filed a motion to set aside or alter or amend the August 8 order. Among other things, Ms. Stofel asserted that the language of the order did not accurately reflect her understanding of the easement. According to her attorney, Ms. Stofel intended this particular easement grant to be exclusive to Mr. Fitzpatrick, his heirs, assigns, and successors, but she did not intend for Mr. and Mrs. Isaacs to be denied access to their property by way of the same driveway.

On September 7, 2016, Mr. and Mrs. Isaacs filed a motion to intervene in the declaratory judgment action between Mr. Fitzpatrick and Ms. Stofel. Mr. and Mrs. Isaacs asserted that their property was accessed by the same right-of-way described in Mr. Fitzpatrick's complaint and the agreed order, and they sought to intervene in order to file a counter-action for a declaration of their own rights. Mr. and Mrs. Isaacs filed a "Proposed Intervening Answer, Counter-complaint, and Cross-complaint." Mr. Fitzpatrick opposed the motion to alter or amend filed by Ms. Stofel and also the motion to intervene filed by Mr. and Mrs. Isaacs.

The chancery court held a hearing on both motions on October 18, 2016. At the conclusion of the hearing, the trial judge announced that he found no basis for granting Ms. Stofel's motion to alter or amend pursuant to Tennessee Rule of Civil Procedure 59, "[a]nd based upon that denial there is no proceeding at this time that will allow the intervention of the Isaacs." The trial court entered a written order simply stating that both the motion to alter or amend and the motion to intervene were "without merit and must be denied."

On January 26, 2017, Mr. and Mrs. Isaacs instituted this proceeding in the chancery court of Perry County, naming both Mr. Fitzpatrick and Ms. Stofel as defendants. Mr. and Mrs. Isaacs argued that the agreed order in the declaratory judgment action between Mr. Fitzpatrick and Ms. Stofel could not prejudice the rights of Mr. and Mrs. Isaacs pursuant to Tennessee Code Annotated section 29-14-107(a) of the Tennessee Declaratory Judgment Act, which provides:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings.

Mr. and Mrs. Isaacs asserted that they were entitled to an easement by implication. In summary, Mr. and Mrs. Isaacs asked the court to hold that their rights were not prejudiced by the proceeding to which they were not a party, and they further asked the court to declare that Mr. and Mrs. Isaacs have an implied easement along the driveway. Ms. Stofel filed an answer admitting that her interest was "as owner of the servient tenement with the lawful obligation attached thereto."[2]

Mr. Fitzpatrick moved to dismiss the complaint on the basis that the trial court could not grant any relief to Mr. and Mrs. Isaacs pertaining to the agreed order or reexamine that ruling. Because the agreed order stated that Mr. Fitzpatrick was granted an "exclusive" easement, he argued that Mr. and Mrs. Isaacs could not be granted an easement to use the same driveway. According to Mr. Fitzpatrick, the complaint should be dismissed as an impermissible collateral attack on a valid final judgment.

The trial court held a two-day bench trial on April 17 and 18, 2018. The trial court took under advisement the motion to dismiss filed by Mr. Fitzpatrick. The court heard testimony from Mrs. Isaacs, Mr. Smith (who owned the property before Mr. and Mrs. Isaacs), Mr. Fitzpatrick, and Ms. Stofel.

Ms. Stofel was 87 years old at the time of trial. She testified about growing up on the Cunningham farm. Ms. Stofel testified that when the Smiths purchased their vacant lot from her in 1999, the old roadbed they saw leading from the Smiths' property across her property to the main gravel road "was the west portion of the old road that went through our farm." Ms. Stofel explained that this was "the farm road" her father had used to move cattle and farm machinery. She said this was "the only drive into our farm." As

---

[2] Mr. and Mrs. Isaacs later amended their complaint to add an alternative argument that they were entitled to an easement by estoppel, but that theory is not at issue on appeal. Ms. Stofel defended against the lawsuit to the extent that she opposed any finding of estoppel based on an alleged misrepresentation, but Ms. Stofel did not oppose the establishment of an easement implied from prior use.

such, Ms. Stofel explained that the driveway used by the Smiths "didn't have to be built" when they bought the property because "[t]he road was already there." According to Ms. Stofel, the Smiths simply improved the existing roadbed and maintained it. Ms. Stofel confirmed that the Smiths used and improved the driveway with her permission, but she also acknowledged that "[i]t was not written in the deed as an easement."

Mr. Smith testified that when he purchased the property, the existing roadbed looked as if it had been in existence a long time. He testified that there was already chert rock on the roadbed when he bought the property. According to Mr. Smith, the roadbed went onto his property and looked like it was his driveway. Mr. Smith said Ms. Stofel pointed out the chert rock and told him this was his easement. Mr. Smith believed that he had an enforceable easement to use the driveway and would not have purchased the property if he thought that he only had mere permission that could be revoked. During the eight years the Smiths owned the property, no one used the driveway except Mr. Smith and his wife. When the Smiths sold the property to Mr. and Mrs. Isaacs, Mr. Smith admittedly told them that the driveway "was their drive."

Mr. Smith was familiar with the river access route described by the express easement in the deed. At first, he explained, the location of that easement traveled farther down the gravel road bordering the steep side of the property, then it left the gravel road and eventually ended at the river. Mr. Smith said that "[y]ou could go on down on it if you had a four-wheel drive pickup," but, he added, there was a gate along the route to keep the Stofels' cows contained. He explained that no one ever used that route and that it was "grown up." As previously noted, when Mr. Smith read the deeds and saw the language about right-of-way access, he believed that it encompassed both the express easement for river access and the driveway easement.

Mrs. Isaacs testified that she and her husband had used and maintained the driveway since they purchased the property from the Smiths in 2007. Like Mr. Smith, Mrs. Isaacs testified that when she saw the language in the deed referencing access off of a thirty-foot right-of-way, she thought that language was referring to the driveway. Mrs. Isaacs testified that the express easement actually described in the deed provides access to the river, but it requires going around someone else's property and traveling down a steep hill through two cattle gates. She testified that one would not drive there in order to reach the cabin because the end point is at the bottom of the hill, and there are 83 steps on the steep "hike" from the river back up to the cabin.

Mrs. Isaacs testified that the driveway was their only access to the cabin until they added the "drop-down" drive as a turnaround for their trailer, which they used to transport kayaks and a lawnmower. Mr. and Mrs. Isaacs had consulted with more than one person about constructing a different driveway, but they were advised to construct "side by side" driveways along the location of the current driveway across Ms. Stofel's land. Mrs. Isaacs testified that the remainder of her property's road frontage was too

steep for constructing a different driveway, dropping "straight down," and it also contained water lines. According to Mrs. Isaacs, the access provided by the drop-down drive was absolutely nowhere close to the access provided by the driveway. If the court did not permit Mr. and Mrs. Isaacs to continue using the driveway, Mrs. Isaacs explained, she would only be able to exit the property via the drop-down drive in a four-wheel drive vehicle, and she would be unable to get her kayak trailer in and out of the property.

Mrs. Isaacs had never seen Mr. Fitzpatrick on the driveway until the incident with the bulldozer in 2015. Mrs. Isaacs testified that she and her husband informed Mr. Fitzpatrick that "[t]his has always been our driveway." Months later, Mrs. Isaacs learned about the litigation between Mr. Fitzpatrick and Ms. Stofel, approximately a week before the August 8 agreed order was entered. Even at that point, Mrs. Isaacs said she did not believe that the litigation between Mr. Fitzpatrick and Ms. Stofel could eliminate Mr. and Mrs. Isaacs' right to use the driveway. Then, on August 8, Mr. Fitzpatrick came to their property, showed them the order, and told them that the driveway was "now exclusively his" and that they would have to obtain his permission to use it. Mrs. Isaacs testified that she and her husband retained an attorney and attempted to intervene in the litigation, but the judge ruled that the case would not be re-opened, and for that reason, there was no case in which to intervene. Mrs. Isaacs testified that she saw no reason why they could not simply share the right to use the driveway with Mr. Fitzpatrick.

Mr. Fitzpatrick was open to letting Mr. and Mrs. Isaacs use the driveway with his permission, but he wanted to retain the right to withdraw that permission at "any time," and he also objected to Mr. and Mrs. Isaacs having an easement that would "travel with the deed." Mr. Fitzpatrick was a former realtor and remained involved in the commercial real estate business. Mr. Fitzpatrick admitted that he knew Mr. and Mrs. Isaacs used the driveway even before he bought the adjacent property. However, Mr. Fitzpatrick saw no reason why Mr. and Mrs. Isaacs needed to be made a party in the first lawsuit. According to Mr. Fitzpatrick, he made it very clear during the bulldozer incident that he was going to sue Ms. Stofel to "regain" the right to use the driveway. Mr. Fitzpatrick said Mr. and Mrs. Isaacs told him that they were "using the easement by Ms. Stofel's permission."

Mr. Fitzpatrick claimed familiarity with the tract owned by Mr. and Mrs. Isaacs, and he testified that the drop-down drive Mr. and Mrs. Isaacs constructed was "a fully functional driveway" independent of the driveway for which they sought an easement. He said, "I can drive my car down it. I can back my car up it. I can walk down it. I walk back up it." However, he conceded that the drop-down drive was "a little bit steep" and "probably not that great" for circling a kayak trailer. Mr. Fitzpatrick acknowledged that the parties' properties were located in "a recreational subdivision, so we all bring trailers and boats." Still, Mr. Fitzpatrick suggested that other driveways in the area were similarly steep and that some landowners even had to park on the road and walk to their cabins. Additionally, Mr. Fitzpatrick suggested that the express easement to the river provided "highly usable" access to Mr. and Mrs. Isaacs.

The parties introduced several photographs of the properties and the driveway in dispute. The following photograph was submitted by Mr. Fitzpatrick and labeled by him:



The main gravel road is on the far right at the top of the incline. The cabin owned by Mr. and Mrs. Isaacs is in the center with the drop-down drive in front of the cabin. The disputed driveway leads in from the left side of the photo, and Mr. Fitzpatrick parked his white vehicle at the location of the old gate at the corner of his property. He labeled the driveway in dispute as "Fitzpatrick Driveway." The express easement included in the deed requires Mr. and Mrs. Isaacs to travel farther down the gravel road he labeled as "Isaacs Deeded Access."

During the testimony, the trial judge inquired about the distance to the property and raised the idea of traveling to the property for an onsite view in order to get a better understanding than the pictures introduced as exhibits could provide. She asked if the parties had any objections, but there were none, so long as any statements made by the parties would be made part of the record. The trial judge made arrangements for the court reporter to travel with them to the site.

The trial judge, the parties, the attorneys, the court clerk, and the court reporter traveled to the site the next day. Mrs. Isaacs testified further at the site and pointed out the drop-down drive that enables her to "loop" around to the driveway with her kayak trailer. Ms. Isaacs testified that the loop was necessary because she simply could not back the trailer out of either the driveway or the drop-down drive. She explained that there is not enough room on the property to turn around with the trailer in the absence of the loop. She conceded that she was "not that great a backer" but said that even if someone was, she was not sure he or she could back out of the property without flipping

his or her car into the ditch. So, without continued use of the driveway, Mrs. Isaacs could pull straight down the drop-down drive but then would have no way to get out. The drop-down drive had chert rock on it, and it was described as "very steep." Mrs. Isaacs also pointed out the deeded access that goes farther down the gravel road, around a pond, and comes out beside the river at the bottom of the 83 steps.

Mr. Fitzpatrick also testified again at the site. Besides describing his own property, he also pointed out a neighbor's driveway that, he opined, was "substantially similar" to the drop-down constructed by Mr. and Mrs. Isaacs. He suggested that such an incline was "typical" for that area.

Closing arguments took place back at the courtroom. Counsel for Mr. and Mrs. Isaacs clarified that they were not seeking a ruling that the declaratory judgment from the previous case was either void or voidable. Instead, they simply claimed that their rights could not be prejudiced by that declaratory judgment because they were not parties to that proceeding. They asked the trial court to hold that that the driveway easement served not only the Fitzpatrick property but also theirs. In response, counsel for Mr. Fitzpatrick maintained that the court could not enter any order that would conflict with the order in the first case, and therefore, it could not establish any interest in the easement that was not exclusive to Mr. Fitzpatrick.

The trial court entered a 29-page memorandum opinion and order on June 25, 2018. First of all, regarding the prior declaratory judgment action, the trial court found that Mr. Fitzpatrick failed to name Mr. and Mrs. Isaacs as parties to the litigation, and therefore, they were "not bound" by the order. The trial court then found that Mr. and Mrs. Isaacs had established each and every element of an easement implied from prior use. Alternatively, the trial court found that Mr. and Mrs. Isaacs had established the elements of an easement implied by necessity. However, the court noted that Mr. Fitzpatrick has an easement over the driveway as well.

Mr. Fitzpatrick filed a motion to alter or amend in which he continued to insist that the instant case was an impermissible collateral attack on a prior court's final judgment. The trial court entered an order denying the motion, referring Mr. Fitzpatrick to the court's discussion of the issue in its 29-page order and reiterating that Mr. and Mrs. Isaacs were not parties to the prior litigation, which only involved Mr. Fitzpatrick and Ms. Stofel. Mr. Fitzpatrick timely filed a notice of appeal.

## II. ISSUES PRESENTED

Mr. Fitzpatrick presents the following issues, which we have slightly restated, for review on appeal:

1.      Whether the trial court erred in failing to dismiss the complaint as an

impermissible collateral attack on a valid final order;

2. Whether the trial court erred in granting Mr. and Mrs. Isaacs an easement implied by prior use when their property is not landlocked, the easement is not necessary for the beneficial enjoyment of the property, and the property has alternative access by an expressly deeded easement or significant road frontage;

3. Whether the trial judge erred "in conducting an extrajudicial investigation into the drivability" of the drop-down drive and relied on facts outside the record relating to her personal investigation; and

4. Whether the trial court erred in granting Mr. and Mrs. Isaacs an easement implied by necessity when Mr. and Mrs. Isaacs limited their allegations to an easement implied from prior use or an easement by estoppel.

For the following reasons, we affirm the decision of the chancery court.

## III.  DISCUSSION

### A.  *The Prior Declaratory Judgment*

At the outset, we consider the impact of the prior declaratory judgment on this litigation. On appeal, Mr. Fitzpatrick insists that this case should have been dismissed as an impermissible collateral attack on a valid final order of another court. Mr. Fitzpatrick takes the position that the agreed order is "enforceable as to everyone." Consequently, according to Mr. Fitzpatrick, no order entered in this case can conflict with the "exclusive" right he was awarded in the first suit. Simply put, Mr. Fitzpatrick argues that the first lawsuit "fully adjudicated the easement rights" with respect to the driveway and granted him exclusive and perpetual rights to it.

In response, Mr. and Mrs. Isaacs state, "No one is claiming here that the order in [the declaratory judgment case] is either void or voidable." Notably, Mr. and Mrs. Isaacs do not argue that Ms. Stofel is not bound by the agreed order or that Mr. Fitzpatrick does not have easement rights. Mr. and Mrs. Isaacs simply argue that *they* are not bound by the agreed order. Mr. and Mrs. Isaacs claim that their rights cannot be prejudiced by the agreed declaratory judgment because of Tennessee Code Annotated section 29-14-107(a). The trial court agreed with Mr. and Mrs. Isaacs as to this point. The order states:

> On June 8, 2016, Mr. Fitzpatrick filed a Declaratory Judgment action against only Betty Stofel in Perry County, Tennessee, Case No. 5108. In that Declaratory Judgment action, Mr. Fitzpatrick requested that the Court "declare Fitzpatrick's right to access his property over Cunningham Lane

- 11 -

and/or the driveway." Mr. Fitzpatrick failed to name the Isaacs as parties to this Declaratory Action.

Later, in August of 2016, counsel for Mr. Fitzpatrick and Ms. Stofel signed an *Order to Establish A Perpetual Right-of-Way Easement*, which was signed by the Court on August 8, 2016. Pursuant to this Order, Mr. Fitzpatrick was granted an "exclusive perpetual right-of-way easement for ingress and egress to benefit Mr. Fitzpatrick." Again, the Isaacs were never made a party to this litigation.

Pursuant to Tennessee Code Annotated, Section 29-14-107(a), "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." *See also, Sadler v. Mitchell*, 162 Tenn. 363, 36 S.W.2d 891 (1931) (All persons should be made parties who have or claim any interest which would be affected by the declaration); *Commercial Casualty Ins. Co. v. Tri-State Transit Co.*, 177 Tenn. 51, 146 S.W.2d 135 (1941) (Any declaratory judgment entered would not be binding upon parties in interest not having been made parties to the action).

In the instant case, Mr. Fitzpatrick was a realtor at one time and was aware of easements that were not in deeds, such as prescriptive easements. In fact, Mr. Fitzpatrick dubbed himself "one of Nashville's most experienced practitioners" in the area of real estate. Moreover, Mr. Fitzpatrick had seen the Isaacs use the driveway easement even before he purchased the lot. Mr. Fitzpatrick knew that the declaratory judgment action could result in "a significant inconvenience to an innocent neighbor." Clearly, Mr. Fitzpatrick knew that the Isaacs would be affected by the declaration. Yet, Mr. Fitzpatrick failed to make the Isaacs a party to the action. As a result, the Isaacs are not bound by the [agreed] *Order to Establish a Perpetual Right-of-Way Easement*.

We discern no reversible error in the trial court's analysis.

Tennessee Code Annotated section 29-14-107 "'imposes stricter requirements'" for joining indispensable parties in a declaratory judgment action than those imposed generally by the Tennessee Rules of Civil Procedure. *Little v. City of Chattanooga*, No. E2018-00870-COA-R3-CV, 2019 WL 1308264, at *8 (Tenn. Ct. App. Mar. 21, 2019) (quoting *Timmins v. Lindsey*, 310 S.W.3d 834, 839 (Tenn. Ct. App. 2009)). "Because of the nature of declaratory relief, the Declaratory Judgments Act makes it incumbent that every person having an affected interest be given notice and an opportunity to be heard before declaratory relief may be granted." *Huntsville Util. Dist. of Scott County v. Gen. Trust Co.*, 839 S.W.2d 397, 403 (Tenn. Ct. App. 1992). "'The non-joinder of necessary parties is fatal on the question of justiciability which, in a suit for declaratory judgment, is a necessary condition of judicial relief.'" *Coleman v. Henry*, 201 S.W.2d 686, 688

- 12 -

(Tenn. 1947) (quoting *Wright v. Nashville Gas & Heating Co.*, 194 S.W.2d 459, 461 (Tenn. 1946)). "[A] party may be necessary if it claims an interest in the property that is the subject of litigation." *Adler v. Double Eagle Properties Holdings, LLC*, No. W2010-01412-COA-R3-CV, 2011 WL 862948, at *4 (Tenn. Ct. App. Mar. 14, 2011) (citing *Harrill v. Am. Home Mortgage Co.*, 32 S.W.2d 1023 (Tenn. 1930)).

This Court recently examined Tennessee Code Annotated section 29-14-107(a) in *Tennessee Farmers Mutual Insurance Company v. DeBruce*, No. E2017-02078-COA-R3-CV, 2018 WL 3773912 (Tenn. Ct. App. Aug. 9, 2018), *perm. app. granted* (Tenn. Jan. 16, 2019). In that case, two drivers were involved in an auto accident, and the plaintiff driver filed a personal injury action against the defendant driver in circuit court. *Id.* at *1. The defendant driver's auto insurance company then filed a separate declaratory judgment action in chancery court, seeking a declaratory judgment that it had no duty to defend or indemnify the defendant driver in the plaintiff driver's suit against him. *Id.* The insurance company served only the defendant driver, not the plaintiff driver, who was not made a party to the declaratory judgment action. *Id.* at *1-2. Ultimately, the insurance company obtained a default judgment in the declaratory judgment action. *Id.* at *1. Almost two years later, the plaintiff driver filed a Rule 60 motion to set aside the declaratory judgment, asserting that she was an indispensable party to the declaratory judgment action because she had a direct interest in its outcome, as the declaratory judgment left the defendant driver "without the means to satisfy or defend himself" in her personal injury suit against him. *Id.* at *2. The plaintiff driver asked the court to set aside the declaratory judgment order as void and allow her to intervene as an interested party. *Id.* However, the trial court denied her petition. *Id.*

On appeal, the plaintiff driver maintained that the order granting the declaratory judgment was void because the trial court did not possess subject matter jurisdiction due to the non-joinder of an indispensable party. *Id.* at *3-4. This Court explained that Tennessee Code Annotated section 29-14-107(a) is based on the Uniform Declaratory Judgments Act, section 11, which likewise provides that "'all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.'" *Id.* at *7 (quoting Unif. Declaratory Judgments Act § 11, 12 U.L.A. 516 (1994)). We recognized that "there is a lack of consensus" among the states concerning the interpretation of this language.[3] *Id.* Some states strictly construe the language to mean that a court must either join all necessary parties or refuse to entertain the declaratory judgment action. *Id.* Others hold that the failure to join a necessary party does not preclude the court from having subject matter jurisdiction over the declaratory judgment action, but any

---

[3] *See also* H.H. Henry, Annotation, *Construction, application, and effect of § 11 of the Uniform Declaratory Judgments Act that all persons who have or claim any interest which would be affected by the declaration shall be made parties*, 71 A.L.R.2d 723 (Originally published in 1960) (discussing the various approaches taken in different jurisdictions).

declaratory judgment entered therein will be treated as non-binding on the absent party. *Id.* The *DeBruce* Court examined prior Tennessee decisions and persuasive authority from other jurisdictions and concluded that the trial court "maintained no subject matter jurisdiction to render a declaratory judgment" in the absence of a necessary party such as the plaintiff driver. *Id.* at \*8. "[W]ithout the joinder of [the plaintiff driver] as a necessary party," the Court explained, "the trial court lacked subject matter jurisdiction and [was] unable to enter a declaratory judgment in the case at bar." *Id.* We held that the trial court's declaratory judgment order was void for lack of subject matter jurisdiction and could not be relied on as dispositive of rights. *Id.*

Other panels of this Court have reached similar conclusions in recent cases. *See, e.g.*, *Little v. City of Chattanooga*, No. E2018-00870-COA-R3-CV, 2019 WL 1308264, at \*8-10 (Tenn. Ct. App. Mar. 21, 2019) (concluding that all landowners abutting an alleyway at issue would be affected by a declaration and therefore the trial court did not err in dismissing the claim for lack of subject matter jurisdiction where the affected landowners were not joined as parties); *Largen v. City of Harriman*, No. E2017-01501-COA-R3-CV, 2018 WL 3458280, at \*9 (Tenn. Ct. App. July 17, 2018) ("[W]e determine that the other affected landowners were indispensable parties to Mr. Largen's complaint [for declaratory judgment] and that their non-joinder deprived the trial court of subject matter jurisdiction over the instant case."); *see also Bane v. Bane*, No. E2018-00790-COA-R3-CV, 2019 WL 2714081, at \*6 n.4 (Tenn. Ct. App. June 28, 2019) (noting that "failure to join an indispensable party affects the trial court's subject matter jurisdiction . . . in a declaratory judgment action"); *Huntsville Util. Dist.*, 839 S.W.2d at 403 ("Parties seeking declaratory relief must also satisfy the more specific requirements of the Declaratory Judgments Act before the courts have jurisdiction to grant declaratory relief.").

However, the Tennessee Supreme Court granted permission to appeal in *DeBruce* earlier this year. One issue presented in the application was:

> Whether, in a declaratory judgment action on the issue of coverage between the insured and the insurance carrier, non-joinder of persons asserting claims against an insured deprives the trial court of subject matter jurisdiction, or whether instead declaratory relief granted in the absence of the interested parties simply does not prejudice the rights of such "persons not parties to the proceedings" under Tenn. Code Ann. § 29-14-107(a).

*DeBruce* remains pending before the Tennessee Supreme Court.

Under the unique circumstances of this case,[4] it is not necessary to determine

---

[4] We reiterate that we are not asked to determine whether the prior declaratory judgment order is valid as between Mr. Fitzpatrick and Ms. Stofel.

whether the declaratory judgment order in the litigation between Mr. Fitzpatrick and Ms. Stofel is void for lack of subject matter jurisdiction or simply non-binding on Mr. and Mrs. Isaacs as non-parties to that action. Under either scenario, the rights of Mr. and Mrs. Isaacs are not prejudiced by the declaratory judgment order from the prior action. *See, e.g., Commercial Cas. Ins. Co. v. Tri-State Transit Co. of La.*, 146 S.W.2d 135, 137 (Tenn. 1941) ("Not having been made parties defendant, any declaratory judgment entered herein would not be binding upon them[.]"); *Williams v. Hirsch*, No. M2010-02407-COA-R9-CV, 2011 WL 303257, at *2 (Tenn. Ct. App. Jan. 25, 2011) *perm. app. denied* (Tenn. May 26, 2011) (noting that if a person was not a party to the suit, "any declaration by the trial court would not be binding on her" and "would be useless . . . in any subsequent attempt to obtain payment from her funds"); *Reed v. Town of Louisville*, No. E2006-01637-COA-R3-CV, 2007 WL 816521, at *2 (Tenn. Ct. App. Mar. 19, 2007) ("If these parties are not added, the declaration could not prejudice their rights."); *Huntsville Util. Dist.*, 839 S.W.2d at 403 ("[B]ondholders who were not parties to the litigation would not be bound by the courts' decision.").

The Declaratory Judgment Act, through Tennessee Code Annotated section 29-14-107(a), unequivocally provides that "no declaration shall prejudice the rights of persons not parties to the proceedings." Because Mr. and Mrs. Isaacs were not parties to the declaratory judgment action between Mr. Fitzpatrick and Ms. Stofel, the agreed declaratory judgment order is not binding on Mr. and Mrs. Isaacs and does not prejudice their rights.

On appeal, Mr. Fitzpatrick argues that the trial court in the declaratory judgment proceeding "previously made the determination that the Isaacs were not necessary parties" to the declaratory judgment action. He argues, "The trial court in that prior court heard each of the Isaacs' positions on their request to intervene as a necessary party and found that each and every argument was utterly without merit." We find this argument disingenuous. A review of the record reveals that the court found no basis under Rule 59 for granting Ms. Stofel's motion to alter or amend, "[a]nd based upon that denial," the trial judge simply added, "there is no proceeding at this time that will allow the intervention of the Isaacs." The trial court did not make any detailed findings regarding Mr. and Mrs. Isaacs' motion for intervention, much less find that Mr. and Mrs. Isaacs were not necessary parties or that "each and every argument was utterly without merit." Counsel for Mr. Fitzpatrick admitted as much to the trial judge during opening statements in this case, stating, "It is correct that Judge Martin [in the previous case] did not permit them to intervene in that lawsuit because that order had already become final[.]"

In any event, "no declaration shall prejudice the rights of persons not parties to the proceedings," Tenn. Code Ann. § 29-14-107(a), and Mr. and Mrs. Isaacs were not parties to the proceedings. The trial court did not err in denying Mr. Fitzpatrick's motion to dismiss based on the prior declaratory judgment.

- 15 -

## B.  Implied Easements

Next, we examine the trial court's finding that Mr. and Mrs. Isaacs established an easement implied from prior use, or alternatively, an easement implied by necessity. "'An easement is a right an owner has to some lawful use of the real property of another.'" *Ingram v. Wasson*, 379 S.W.3d 227, 238 (Tenn. Ct. App. 2011) (quoting *Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005)).  Easements can be created in many ways, including an express grant, reservation, implication, prescription, estoppel, or eminent domain. *Id.* (citing *Pevear v. Hunt*, 924 S.W.2d 114, 116 (Tenn. Ct. App. 1996)).  An easement by implication can arise upon severance of a single piece of land into separately owned parcels of land "as an inference of the intention of the parties to the conveyance."  *Cellco*, 172 S.W.3d at 588.  An implied easement arises "by implication from the circumstances under which the conveyance was made."  *Barrett v. Hill*, No. 01A01-9806-CV-00295, 1999 WL 802642, at *2 (Tenn. Ct. App. Oct. 7, 1999).  As exceptions to the general rules regarding easements by express grants or prescription, implied easements are not favored, and "the courts of this state have expressed a policy in favor of restricting the use of the doctrine."  *Cellco*, 172 S.W.3d at 589.  At the same time, however, "their use has been long recognized by the courts of this state." *Id.*

As this Court explained in *Eberle v. Elliott*, No. E2012-00298-COA-R3-CV, 2013 WL 3421940 (Tenn. Ct. App. June 28, 2013):

> Tennessee courts have long held that to find the existence of an easement by implication, the following elements must be present:
>
> '(1) A separation of the title; (2) Necessity that, before the separation takes place, the use which gives rise to the easement shall have been long established and obvious or manifest as to show that it was meant to be permanent; and (3) Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained.

*Id.* at *8 (quoting *Cellco*, 172 S.W.3d at 589).  Stated differently,

> Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude is in use at the time of severance and is necessary for the reasonable enjoyment of the other part, on a severance of the ownership a grant of the right to continue such use arises by implication of law.

*Barrett*, 1999 WL 802642, at *3 (quoting *Lively v. Noe*, 496 S.W.2d 852, 854-55 (Tenn. Ct. App. 1970)).  The elements must be proven by a preponderance of the evidence.

- 16 -

*Eberle*, 2013 WL 3421940, at \*8.

There are two types of implied easements – easements implied from prior use and easements by necessity. *Id.* at \*9. There is considerable overlap between the two types, which can lead to confusion. *Id.* (citing *Ingram*, 379 S.W.3d at 240). Both are implied arising from a conveyance and hinge on a finding of necessity. *Id.* However, an easement by necessity does not depend on prior use and "'may allow for a route of access where one previously did not exist.'" *Id.* (quoting *Ingram*, 379 S.W.3d at 240). "Easements of necessity, also called easements by necessity or ways of necessity, are typically implied to provide access to a landlocked parcel." *M.C. Headrick & Son Enters., Inc. v. Preston*, No. 124, 1989 WL 37262, at \*7 (Tenn. Ct. App. Apr. 20, 1989) *perm. app. denied* (Tenn. Nov. 27, 1989). On the other hand, where a prior use exists, "courts often require a showing of lesser necessity." *Id.* "Implication of an easement from a prior use is based on the protection of a purchaser's reasonable expectations that his or her use of an easement will be a continuation of her predecessor's use." *Rogers v. Roach*, No. M2011-00794-COA-R3-CV, 2012 WL 2337616, at \*7 (Tenn. Ct. App. June 19, 2012).

We first consider whether Mr. and Mrs. Isaacs proved the elements of an easement implied from prior use.

### 1.    Easement Implied from Prior Use

#### a.    Separation of Title

Mr. Fitzpatrick concedes the existence of the first element, separation of title, because the property now owned by Mr. and Mrs. Isaacs was originally part of Ms. Stofel's property until she conveyed it to the Smiths in 1999.

#### b.    Prior Use

"[T]he rule regarding easements implied from prior use is based on the assumption that people intend to buy and sell land with the existing access arrangements, and it furthers the policy of protecting the reasonable expectations and the intent of parties to such transactions." *Ingram*, 379 S.W.3d at 239. Accordingly, the second required element is that the use giving rise to the implied easement was long established before the separation took place and obvious or manifest as to show that it was meant to be permanent. *Cellco*, 172 S.W.3d at 589. "'In order to show that the preexisting use was permanent, the owner of the dominant estate must prove that the common owner used the premises in an altered condition long enough *before the conveyance*.'" *Id.* at 590 (quoting 28A C.J.S. *Easements* § 66 (1996)). A "mere temporary provision or arrangement" for convenience will not constitute the degree of permanency required to burden the property with continuation of the use when divided by a conveyance to different parties. *Id.*

- 17 -

Applying these principles, Mr. and Mrs. Isaacs had to show that before Ms. Stofel sold the parcel to the Smiths in 1999, the use of what is now the driveway across Ms. Stofel's property was long established and obvious or manifest to indicate that it was permanent. *See Eberle*, 2013 WL 3421940, at *9. The trial court found that "Cunningham Lane is the road over which the driveway easement that is the subject of this lawsuit runs." The court found that before Mr. Smith bought the property from Ms. Stofel, "the lot was accessed by a driveway, which runs over Cunningham Lane." The court found that the driveway "was and is on Ms. Stofel's land" and that it "appeared to have been there a long time at the time the Smiths purchased the lot." The court mentioned that the drive had chert rock on it. It also noted Ms. Stofel's testimony that Cunningham Lane ran through their family farm as a cattle trail and that they used this road to access their farm. Based on these findings, the trial court found that Mr. and Mrs. Isaacs had proven the second required element.

From our review of the record, the evidence supports the trial court's finding. Mr. Fitzpatrick argues that these facts do not sufficiently demonstrate a prior use with "indicia of permanency." He attempts to diminish the significance of the roadbed as a mere cattle trail used for farm equipment, and he points to the extent of the improvements the Smiths made to make it into a more usable driveway.

A similar argument was rejected by this Court in *Eberle,* wherein the appellants argued that what had since become a road was, before the time of separation of title, only "a farm road, a footpath and a logging road." 2013 WL 3421940, at *9. They argued that these did not constitute uses meant to be permanent once the titles were separated. *Id.* This Court found that use as a footpath and logging road for several years was sufficient, and we also looked to the seller's intent and concluded that the seller did in fact intend for such access to continue.[5] *Id.* at *11. *See also Smith v. Hankins*, No. E2010-00733-COA-R3-CV, 2011 WL 3847148, at *8 (Tenn. Ct. App. Aug. 30, 2011) (concluding that the prior use element was met by considering the intent of the parties and testimony that an "old wagon road" had been used by tractors and ATVs for many years).

The record in this case similarly contains evidence of a long established use and intent for access to continue. The evidence in the record establishes that Ms. Stofel intended for the Smiths to access their property via the old farm road after the separation of title. The trial court found that both Ms. Stofel and the real estate agent told Mr. Smith that this would be an easement for him to use. We conclude that the second element was sufficiently proven because the use giving rise to the easement was long established and obvious or manifest as to show that it was intended to be permanent.

---

[5] In deciding the issue of permanence, it is permissible to look at the intention of the parties at the time of the severance. *Cellco*, 172 S.W.3d at 590 (citing 28A C.J.S. *Easements* § 66 (1996)).

### c. Reasonable Necessity

The third element is that the easement is "essential to the beneficial enjoyment of the land granted or retained." *Cellco*, 172 S.W.3d at 589. The continuance of the prior use must be "reasonably necessary to the beneficial enjoyment" of the property. *Ingram*, 379 S.W.3d at 242. "Tennessee law interprets the concept of 'necessity' as being 'reasonably necessary' for the enjoyment of the dominant tenement, as opposed to strict or absolute necessity." *Eberle*, 2013 WL 3421940, at *13 (quoting *Haun v. Haun*, No. E2004-01895-COA-R3-CV, 2005 WL 990566, at *6 (Tenn. Ct. App. Apr. 28, 2005)). Mr. Fitzpatrick presents several arguments as to why use of the driveway easement is not reasonably necessary for Mr. and Mrs. Isaacs.

First, Mr. Fitzpatrick argues that use of the driveway is not necessary because the deed to Mr. and Mrs. Isaacs provided for an express easement that travels down the side of the property in a different location. The trial court noted the existence of the express easement in the deed but found that this right-of-way went "far past the [] land and cabin, then turns back along the river, and does not provide reasonable or adequate access to the land or cabin." The trial court found that if Mr. and Mrs. Isaacs were to use the deeded easement, they "would have to drive along the 30 foot right-of-way [on the gravel road], past most of their land, past the cabin, then turn almost 180 degrees and travel along the river. Then, the Isaacs would have to climb 84 stairs to get up to their land." The trial court concluded that the deeded easement "does not provide reasonable or adequate access to the land or cabin." The evidence does not preponderate against this conclusion, particularly in light of the fact that the trial judge personally observed the property.

Mr. Fitzpatrick also argues, "If at the time of separation of title, Ms. Stofel and the Smiths intended the cow-trail to serve as the means of access to the property, then a second, explicit easement would not be necessary." He argues that the driveway easement was not "contemplated in the sales contract or the applicable property deeds." For an implied easement, however, it is not necessary for the contract or deeds to specify it. "The terms or circumstances surrounding the conveyance of an interest in land may give rise to an implied easement[.]" *Ingram*, 379 S.W.3d at 239. Easements implied from a prior use "'ordain the perpetuation of that use on the general principle that property is usually passed along with its burdens and that the parties, *as evidenced by their actions*, understood that their property was thus conveyed.'" *Cellco*, 172 S.W.3d at 590 (quoting *Barrett*, 1999 WL 802642, at *2) (emphasis added). For an implied easement, we presume it was within the contemplation of the parties. *Id*. As the Restatement explains,

> 'Unless a contrary intent is expressed or implied, the circumstance that prior to a conveyance severing the ownership of land into two or more parts, a use was made of one part for the benefit of another, implies that a

servitude was created to continue the prior use if, at the time of the severance, the parties had reasonable grounds to expect that the conveyance would not terminate the right to continue the prior use.'

*Ingram*, 379 S.W.3d at 239 (quoting Restatement (Third) of Prop.: Servitudes § 2.12).

No contrary intent was expressed or implied here. To the contrary, the evidence affirmatively establishes that Ms. Stofel intended for the Smiths to continue the prior use of the driveway even after the conveyance and despite the existence of the express easement in the deed.

Next, Mr. Fitzpatrick notes that the property owned by Mr. and Mrs. Isaacs is not landlocked because it borders the gravel road along the steep incline for a distance of approximately eight car-lengths. He notes that Mr. and Mrs. Isaacs constructed the drop-down drive on this section of the property and suggests that either the drop-down drive or another similar drive would provide sufficient access for Mr. and Mrs. Isaacs without the driveway easement.

The trial court rejected this argument as well. The court recognized that Mr. and Mrs. Isaacs had constructed the drop-down "turnaround" on the steep portion of their land. The trial court also found that this was "the only portion of their land on which they could have made this turnaround" because it was "the least steep section and there are water lines on the other sections." The trial court found that the drop-down drive enables Mrs. Isaacs to drive down onto her property and curve around to the driveway easement, and the court found that she simply had no other way to get a kayak trailer to the river. The trial court also found that the section of the land where they created the drop-down drive "is far too steep to drive up." It found that "[a] vehicle can be driven down it because it is downhill. But, a vehicle cannot be driven up it because it is too steep." As a result, the trial court found that Mrs. Isaacs cannot leave the property without using the driveway easement, especially when pulling a kayak trailer. The trial court noted that these lots were "primarily for recreational use and access to the Buffalo River," and it found that the Smiths and Mr. and Mrs. Isaacs purchased the lot for recreational purposes. In sum, the trial court concluded that Mr. and Mrs. Isaacs had clearly established that the driveway easement was reasonably necessary to the beneficial enjoyment of their land. Having thoroughly reviewed the record, we conclude that the evidence supports this finding as well.

Mr. Fitzpatrick also argues that Mr. and Mrs. Isaacs were required to present testimony showing that it would be cost prohibitive to construct a suitable substitute driveway on their own property.[6] Again, Mr. Fitzpatrick's arguments are much like those

---

[6] To support this argument, Mr. Fitzpatrick cites cases discussing easements by necessity, also called "ways of necessity." *See, e.g.*, *Newman v. Woodard*, 288 S.W.3d 862, 868 (Tenn. Ct. App. 2008)

- 20 -

presented and rejected in *Eberle*. In that case, the appellants argued that the claimed easement was not essential to the beneficial enjoyment of the land because there was already access to the tract via a county road, and the landowner failed to show that the expense of creating an alternate route would be unreasonable. 2013 WL 3421940, at *11. In response, the landowner argued that because of the terrain, she should not be limited to one means of ingress and egress to her thirty-acre tract. *Id.* This Court agreed with the landowner and also concluded that "proof of comparable expense was not required to support the trial court's finding." *Id.* For an easement implied from prior use, only reasonable necessity was required, and the landowner could establish that the use was reasonably necessary without producing a "cost analysis" for creating an alternate access road. *Id.* at *14.

Likewise, in *Howard v. Thurman*, No. M1998-00147-COA-R3-CV, 2000 WL 488473, at *2 (Tenn. Ct. App. Apr. 26, 2000), an appellant argued that a landowner failed to prove that her use of an existing driveway and parking area was reasonably necessary when "she could gain access to her lot from the main road on the front by putting in a culvert and cutting a driveway into her front yard." The availability of this option did not preclude a finding that her use of the existing driveway was *reasonably* necessary. We explained, "The only alternatives involve building another driveway and parking area or obtaining another easement from another land owner. When we consider that the driveway and parking area have served Ms. Howard's home from the time it was built, the necessity of keeping that access seems perfectly reasonable." *Id.* *See also Rhoades v. Taylor*, No. M2001-00643-COA-R3-CV, 2003 WL 724672, at *5 (Tenn. Ct. App. Mar. 4, 2003) (finding the use of an existing driveway reasonably necessary when the alternative would require the landowner to cut down several trees and to construct a new driveway, which would be less convenient and could pose problems with the septic system); *Ingram*, 379 S.W.3d at 242 (finding reasonable necessity where there may have been other roadbeds, but this was the only one accessible with a two wheel drive vehicle).

Applying the reasoning of these cases, we conclude that the evidence supports the trial court's finding that it was reasonably necessary for Mr. and Mrs. Isaacs to access their property via the existing driveway across Ms. Stofel's property. Their need to use the driveway constitutes more than a matter of mere convenience.

Finally, Mr. Fitzpatrick argues that the trial court committed reversible error in its findings from the onsite view. In its order, the trial court specifically noted Mr.

---

(finding no easement by necessity because there was no testimony that it would be impracticable or cost prohibitive to build a road down a bluff); *Allison v. Allison*, 193 S.W.2d 476 (Tenn. Ct. App. 1945) (discussing the requirements for "an easement of way"); *see also Douglas v. Cornwell*, No. E2016-00124-COA-R3-CV, 2016 WL 5416338, at *1 (Tenn. Ct. App. Sept. 28, 2016) (affirming the trial court's finding that "the easement was not a necessity," citing *Newman* and *Allison*, without mentioning easements implied by prior use); *M.C. Headrick*, 1989 WL 37262, at *7 (explaining the difference between easements by necessity and easements implied from prior use).

Fitzpatrick's insistence that he or Mrs. Isaacs could drive up the steep incline of the drop-down drive, and therefore, the drop-down drive should be utilized as the driveway. The trial judge noted that when she attempted to leave the onsite view of the premises, she attempted to leave via this section of the property, "spun out," and was unable to exit that section of the land. The trial judge stated that she had to exit using the driveway easement. However, the court added, "Even without the Court['s] on-site view, the Court finds Ms. Isaacs to be credible in this regard and Mr. Fitzpatrick not to be credible." The court stated that this determination was made "based on both of these witnesses' testimony." Citing his demeanor and appearance while testifying, the court found that Mr. Fitzpatrick "was just not believable" and that "most of" his testimony was not credible.

Mr. Fitzpatrick argues on appeal that the trial judge should not have tried to exit the property using the drop-down drive because this constituted an impermissible "investigation of the drivability" of the driveway. We express no opinion as to the propriety of the trial court's actions in this regard because the trial court specifically stated that even without the onsite view of the premises, the court found the testimony of Mrs. Isaacs regarding this issue to be credible while the testimony of Mr. Fitzpatrick was not. Thus, any alleged error regarding the extent of the onsite view or "investigation" would be harmless. *See* Tenn. R. App. P. 36(b).

### 2. Easements by Necessity

The trial court alternatively ruled that Mr. and Mrs. Isaacs had established an easement by necessity. On appeal, Mr. Fitzpatrick argues that the trial court erred in considering this theory because Mr. and Mrs. Isaacs were permitted to amend their complaint to proceed solely on the theories of an easement implied by prior use or an easement by estoppel, but not an easement implied by necessity. Mr. and Mrs. Isaacs argue that it "is not necessary for this Court to be troubled with" this issue because they have alternatively established an easement implied by prior use. We agree with Mr. and Mrs. Isaacs and pretermit consideration of an easement by necessity.

### IV. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is affirmed and remanded. Costs of this appeal are taxed to the appellant, Brennon Fitzpatrick, for which execution may issue if necessary.

_____
CARMA DENNIS McGEE, JUDGE