IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 13, 2025 Session

## JOHN A. WATSON, JR. v. WATCO COMMUNITIES, LLC ET AL.

**Appeal from the Chancery Court for Sevier County**
**No. 19-11-235     James H. Ripley, Chancellor**

_____

**No. E2024-01263-COA-R3-CV**

_____

A member of a Tennessee limited liability company filed a complaint seeking the appointment of a receiver to operate the company and the dissolution and winding up of the company. The trial court appointed a receiver, the receiver moved to sell the company's assets, and the member objected to the sale. The member also sought to amend his complaint to add additional claims against additional defendants. The trial court entered an order approving the receiver's proposed sale of the assets and denying the member's motion to amend his complaint. The trial court ordered that the proceeds of the sale are to be paid into the trial court's registry and certified its order as a final judgment. We conclude that the trial court's order was not a final judgment and that the trial court improvidently certified it as such. Thus, this Court lacks subject matter jurisdiction, and we dismiss this appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Roy E. Barnes, Marietta, Georgia; and Mark S. Dessauer, Kingsport, Tennessee, for the appellant, John A. Watson, Jr.

Ryan E. Jarrard, Knoxville, Tennessee, for the appellee, Richard F. Ray.

Gregory Brown, W. Scott Hickerson, and G. Alan Rawls, Knoxville, Tennessee, for Amici Curiae James L. Coxwell, Sr., Cam Coxwell Shiflett, and Glenn Shiflett.

# OPINION

## BACKGROUND

On May 23, 2003, the appellant, John A. Watson, Jr. ("Mr. Watson"), and James L. Coxwell, Sr. ("Mr. Coxwell") formed Watco Communities, LLC ("WATCO"), a Georgia limited liability company, for the purpose of purchasing and operating an independent living and assisted living facility in Sevierville, Tennessee. Thereafter, on October 2, 2009, Mr. Watson and Mr. Coxwell formed MountainBrook Assisted Living, LLC ("MountainBrook"), a Tennessee limited liability company, to assume operations of the facility.[1] WATCO owns the real estate on which the facility is located and initially received lease payments from MountainBrook. The companies' operating agreements state that Mr. Watson and Mr. Coxwell each possess a fifty-percent membership interest in the respective company and provide for each company to be jointly managed by the two members.

On November 19, 2019, Mr. Watson filed a Verified Complaint against the companies in the Sevier County Chancery Court (the "trial court") seeking dissolution of MountainBrook[2] and the appointment of a receiver. According to Mr. Watson, he and Mr. Coxwell began having disputes about MountainBrook's management and other affairs in 2016. Mr. Watson averred that Mr. Coxwell "embarked on a scheme to deprive [Mr. Watson] of his ownership interests in" the companies and prevented Mr. Watson from participating in the management and operations of MountainBrook. He claimed that Mr. Coxwell hired Mr. Coxwell's son-in-law, Glenn Shiflett ("Mr. Shiflett"), as Executive Director of MountainBrook in January 2018 without Mr. Watson's knowledge or consent. Mr. Watson alleged that Mr. Shiflett had since taken over the facility's management and operations and that Mr. Coxwell, "due to certain health conditions, lacks the mental acuity to manage or assume duties relative to the operation of the facility." Mr. Watson urged that MountainBrook must be dissolved because MountainBrook and WATCO were being mismanaged by Mr. Coxwell and his family, Mr. Coxwell was using the companies' assets for the benefit of himself and his family, and Mr. Watson was being denied the rights to which he was entitled as a member of the company. Therefore, he asked the trial court to

> 3. . . . appoint a receiver [] to assume control of the operation of the business of MountainBrook and WATCO, to investigate the financial affairs of such companies, be empowered to make all decisions regarding the business and affairs of the two companies, and take such other steps as the Court may authorize to be in the best interests of MountainBrook and

---

[1] During the course of this litigation, MountainBrook stopped providing assisted living services and transitioned to providing only independent living services.

[2] On March 12, 2018, prior to filing this lawsuit, Mr. Watson filed a verified petition in the Superior Court of Cobb County, Georgia seeking the dissolution of WATCO. That case was later transferred to the Superior Court of Walker County, Georgia (the "Georgia trial court").

WATCO and its respective members including a prospective sale of the companies' assets;

4. . . . enter a [] restraining order enjoining the defendants and their respective officers, directors, members, employees, agents and representatives from interfering, impeding or interrupting the Court appointed receiver in operating the business and conducting the affairs of MountainBrook and WATCO and directing their respective officers, directors, members, employees, agents and representatives to cooperate with the receiver in the discharge of his or her duties, including the turning over of the defendants' assets and business records;

* * *

6. . . . order that MountainBrook be dissolved, its assets orderly liquidated for the benefit of its creditors and any residuary remaining be distributed to the companies' members in accordance with their respective ownership interests[.]

The parties then embarked on a course of protracted litigation. On April 21, 2020, the trial court appointed Richard F. Ray, CPA ("Receiver") to serve as receiver of MountainBrook. Approximately a year later, on May 18, 2021, the trial court ordered that MountainBrook be dissolved and "be sold in co-ordination with the sale of Watco Communities, LLC and that the proceeds of said sale be distributed only after" further hearing by the Court. More than a year after that, on September 15, 2022, the trial court entered an order establishing detailed procedures for the sale and memorializing an express agreement by the parties that a representative of Mr. Coxwell could participate in the bidding process as a potential bidder.[3] The order also required that Receiver "file a motion seeking final approval of the final sales agreement," that the proceeds of the sale be paid into the trial court's registry, and that Receiver "submit a motion of final accounting that shall account for the full dispersal of the funds prior to any money being paid out from the proceeds of the sale." A flurry of filings from the parties followed. We discuss only those filings relevant to this appeal.

On June 5, 2023, Mr. Watson filed a motion seeking to amend his complaint to add Ms. Shiflett and Mr. Coxwell as defendants and assert a claim against them.[4] In support of this motion, Mr. Watson argued that Mr. Coxwell, "with the probable assistance of [Ms.]

---

[3] Throughout the course of this litigation, Mr. Coxwell's daughter, Cam Coxwell Shiflett ("Ms. Shiflett"), has acted on his behalf pursuant to a power of attorney executed by Mr. Coxwell.

[4] Only the first page of this motion and the exhibits thereto are in the record on appeal. An exchange between the trial court and Mr. Watson's counsel during the June 6, 2024 hearing reveals that this is the way the motion was filed in the trial court.

Shiflett," breached a fiduciary duty owed to Mr. Watson by executing two deeds purporting to transfer WATCO's real property to the Coxwell Revocable Trust. He also argued that Ms. Shiflett was "operating under a power of attorney which may not be valid" and had impacted his equity in the companies by "incur[ring] millions of dollars in debt after the appointment of the Receiver all without court approval." The trial court heard this motion on July 7, 2023, and took it under advisement. On March 19, 2024, Mr. Watson filed an amended motion renewing his request to add Ms. Shiflett and Mr. Coxwell and seeking to add Mr. Shiflett as a defendant. In support thereof, Mr. Watson alleged that he was damaged by actions taken by Ms. Shiflett and Mr. Shiflett during the course of the litigation.

On May 16, 2024, Receiver filed an amended motion to approve the sale of the receivership assets. He moved the trial court to approve the sale of all the companies' assets to Mr. Coxwell for $6,400,000.00 "pursuant to the terms of the prior sale orders, the terms of the auction, and [the] final accepted Amended Qualified Bid Term Sheet" attached thereto. Mr. Watson filed a response in opposition to Receiver's motion arguing that Mr. Coxwell "is totally incompetent and unable to transact business[,]" that the power of attorney executed by Mr. Coxwell appointing Ms. Shiflett as his attorney-in-fact was "executed while [Mr.] Coxwell was incompetent and is of no force and effect[,]" that Ms. Shiflett "seeks to purchase the property for her own benefit and use rather than that of" Mr. Coxwell, and that Receiver allowed Mr. Coxwell to make an improper credit bid that "chilled the bidding." Therefore, Mr. Watson urged that Receiver's motion for approval of the sale should be denied. Alternatively, Mr. Watson argued that if the sale is approved, the proceeds thereof should be paid into the registry of the Court "and further investigation into the matter allowed."

The trial court heard Mr. Watson's amended motion to add parties and Receiver's amended motion to approve the sale on June 6, 2024. On July 22, 2024, the trial court entered an order (the "July 2024 Order") granting Receiver's motion to approve the sale and finding that

> the objections raised by John Watson in his Reply concerning Mr. Co[x]well's representative being permitted to bid on the Assets and/or the validity of the power of attorney granted by Mr. Coxwell, that those objections had been waived, as Mr. Coxwell (through his appointed representative) was permitted to bid on the sale since the Court's previous order of September 9, 2022. . . . With respect to the additional arguments Mr. Watson presented in his Response in opposition to the Motion to Approve Assets, the Court overrules the objections raised. The Court, however, allows Mr. Watson to incorporate a previous proffer on the issue of subject matter jurisdiction, the arguments related thereto having been considered, overruled, and denied. . . .

- 4 -

The trial court also denied Mr. Watson's motion to amend, stating

> I do not think that it's appropriate to add them at this point or even at the point where we first argued this. This case is essentially over. I mean, we've [] gone through many, many months of litigation for the sale that's been conducted. I just don't think that that's a timely motion to amend. And I think the potential for us upsetting the applecart with regard to everything we've done up to this point is a very real danger if additional parties are added.

The trial court ordered that the sale be performed "pursuant to the terms of the prior sale orders entered by this Court and the [Georgia trial court]" and that "all funds from the sale [] be deposited into the Clerk and Master of Sevier County, Tennessee." Upon finding no just reason for delay, the trial court entered the July 2024 Order as a final order pursuant to Tennessee Rule of Civil Procedure 54.02. Mr. Watson appeals the July 2024 Order.

## ISSUES

Mr. Watson raises three issues, which have been restated slightly:

1. Whether the trial court erred in approving the sale to Mr. Coxwell when his bid was submitted pursuant to a power of attorney executed when Mr. Coxwell was incompetent.

2. Whether the trial court erred in permitting Mr. Coxwell to make a "credit bid" based upon a judgment Mr. Coxwell obtained against the companies in a separate lawsuit.

3. Whether the trial court erred in denying Mr. Watson's motions to amend.

Receiver raises one additional issue: whether this Court lacks jurisdiction to hear this appeal.

## ANALYSIS

As a threshold issue, Receiver argues that we lack jurisdiction to hear this appeal because the July 2024 Order was not a final judgment and should not have been certified as such pursuant to Tennessee Rule of Civil Procedure 54.02. Generally, this Court has subject matter jurisdiction only over final judgments. *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) (quoting *Aetna Cas. & Sur. Co. v. Miller*, 491 S.W.2d 85 (Tenn. 1973)); *see also* Tenn. R. App. P. 3(a) ("Except as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims,

rights, and liabilities of all parties.").  A final judgment adjudicates all "claims, rights, and liabilities of all the parties" and "resolves all the issues [] 'leaving nothing else for the trial court to do.'" *Discover Bank v. Morgan*, 363 S.W.3d 479, 488 n.17 (Tenn. 2012) (citing Tenn. R. App. P. 3(a); quoting *In re Est. of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003)). Rule 54.02 is an exception to this final judgment rule, which "permits a trial court to direct the entry of a final order as to fewer than all of the claims or parties upon an express finding that there is no just reason for delay." *Ingram v. Wasson*, 379 S.W.3d 227, 238 (Tenn. Ct. App. 2011) (citing *Newell d/b/a Solowell v. Exit/In, Inc.*, No. M2003-00434-COA-R3-CV, 2004 WL 746747, at *1 (Tenn. Ct. App. Apr. 7, 2004)).

As this Court has explained, however,

"the trial court's authority to direct the entry of a final judgment is not absolute." *Brentwood Chase Cmty. Ass'n v. Truong*, No. M2014-01294-COA-R3-CV, 2014 WL 5502393, at *2 (Tenn. Ct. App. Oct. 30, 2014) (citing *Crane v. Sullivan*, No. 01A01-9207-CH-00287, 1993 WL 15154, at *1-2 (Tenn. Ct. App. Jan. 27, 1993)). "Rule 54.02 does not apply to all orders that are interlocutory in nature." *Konvalinka v. Am. Int'l Grp., Inc.*, No. E2011-00896-COA-R3-CV, 2012 WL 1080820, at *3 (Tenn. Ct. App. Mar. 30, 2012). In fact, an order can only be certified as final in limited circumstances. *Johnson* [*v. Nunis*], 383 S.W.3d [122,] 130 [(Tenn. Ct. App. 2012)]. Because Rule 54.02 provides that a trial court may "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties," the order certified as final must be dispositive of an entire claim or party. *Bayberry*, 783 S.W.2d at 558.

"The determination of whether Rule 54.02 certification is proper is not always easy." *Ingram*, 379 S.W.3d at 238. However, this Court has set out two requirements for the proper certification of a final judgment under Rule 54.02: (1) the order must eliminate one or more but fewer than all of the claims or parties, and (2) the order must expressly direct the entry of final judgment upon an express finding of "no just reason for delay." *FSG Bank, N.A. v. Anand*, No. E2011-00168-COA-R3-CV, 2012 WL 554449, at *4 (Tenn. Ct. App. Feb. 21, 2012) (quoting *Carr v. Valinezhad*, [No.] M2009-00634-COA-R3-CV, 2010 WL 1633467 at *2 (Tenn. Ct. App. Apr. 22, 2010)).

On appeal, this Court reviews a trial court's Rule 54.02 certification of a judgment as final using a dual standard of review. *King v. Kelly*, No. M2015-02376-COA-R3-CV, 2016 WL 3632761, at *3 (Tenn. Ct. App. June 28, 2016); *Brown v. John Roebuck & Assocs., Inc.*, No. M2008-02619-COA-R3-CV, 2009 WL 4878621, at *5 (Tenn. Ct. App. Dec. 16, 2009). The initial determination of whether a particular order disposes of a distinct and

separable "claim" that is subject to Rule 54.02 certification is a question of law, which we review *de novo*. *Ingram*, 379 S.W.3d at 238; *Brown*, 2009 WL 4878621, at *5. If the order properly disposes of an entire claim or party, this Court must then determine whether "there is no just reason for delay" within the meaning of Rule 54.02. The trial court's determination as to this issue is reviewed under an abuse of discretion standard. *King*, 2016 WL 3632761, at *3; *Ingram*, 379 S.W.3d at 238.

Turning to the question of whether the trial court's orders disposed of one or more of the claims or parties, we first note that if the trial court's order purports to certify a judgment as final, but the order is not conclusive as to an entire claim or party, an appeal from the order will not lie even though the trial court attempted to treat the order as final. *FSG Bank*, 2012 WL 554449, at *4. In other words, in the absence of a final adjudication of at least one claim or party, Rule 54.02 is not applicable. *King*, 2016 WL 3632761, at *4.

*Infinity Homes, Inc. v. Horizon Land Title, Inc.*, No. M2022-00829-COA-R3-CV, 2023 WL 3884723, at *3–4 (Tenn. Ct. App. June 8, 2023).

Receiver argues that the trial court erred in certifying the July 2024 Order as a final judgment pursuant to Rule 54.02 because it is not conclusive as to an entire claim or party. Mr. Watson responds that "all of the claims of [Mr.] Watson were decided. The sale was finally approved, and [Mr.] Watson's claims and objections were overruled and dismissed. . . . [T]he decision against [Mr.] Watson was final and determined his rights adversely to him." However, Mr. Watson conflates his claim with his legal theories. For purposes of Rule 54.02,

[a] "claim" [] is defined as the "aggregate of operative facts which give rise to a right enforceable in the courts." *Carr v. Valinezhad*, No. M2009-00634-COA-R3-CV, 2010 WL 1633467 at *2 (Tenn. Ct. App. Apr. 22, 2010) (citations omitted). Alternate theories in pursuit of one recovery do not constitute separate claims. *Paul v. Watson*, No. W2011-00687-COA-R3-CV, 2012 WL 344705, at *4 (Tenn. Ct. App. Feb. 2, 2012). Likewise, a complaint seeking multiple remedies for the alleged violation of a single right states only a single claim for relief. *Coleman v. Tennessee Bd. of Parole*, 2016 WL 6248027, at *5.

*Morgan v. Land Design Co., Inc.*, No. M2019-00563-COA-R3-CV, 2019 WL 4566931, at *2 (Tenn. Ct. App. Sept. 20, 2019). Mr. Watson's Verified Complaint asked the trial court to "order that MountainBrook be dissolved, its assets orderly liquidated for the benefit of its creditors and any residuary remaining be distributed to the companies' members in accordance with their respective ownership interests[.]" Upon dissolution,

an LLC is to "be wound up, and its existence . . . terminated." [Tenn. Code Ann.] § 48-249-601(c); see *Moran v. Willensky*, 339 S.W.3d 651, 660 (Tenn. Ct. App. 2010) (explaining that "'dissolution trigger[s] the next phase, the winding up of the business'") (quoting *Norris v. Stuart*, No. M2004-01839-COA-R3-CV, 2006 WL 721299, at * 4 (Tenn. Ct. App. March 20, 2006)). Winding up involves "liquidat[ing] the assets." *See Hodge v. DMNS Co.*, 652 S.W.2d 762, 764 (Tenn. Ct. App. 1982); *see also* Tenn. Code Ann. § 48-249-620(a)(1). When liquidating assets, the assets are distributed first to creditors. Tenn. Code Ann. § 48-249-620(a)(1)(A). If any assets remain, they are next distributed "to members . . . in satisfaction of liabilities for distributions." *Id.* § 48-249-620(a)(1)(B). And they are lastly distributed to members—"first, for the return of their contributions that have not previously been returned, and second, respecting the[ir] membership interests." *Id.* § 48-249-620(a)(1)(C).

*Meadows v. Story*, No. M2020-00886-COA-R3-CV, 2022 WL 4541193, at *4 (Tenn. Ct. App. Sept. 29, 2022).

Herein lies the fault with Mr. Watson's argument. Although the trial court has approved the asset sale, it has not determined how the proceeds of such sale are to be distributed. More specifically, the trial court has determined that Mr. Coxwell may purchase the assets for $6,400,000.00, but how that money will be distributed remains to be determined. Until the trial court makes such determination, there is more for the trial court to do with respect to Mr. Watson's claim for the dissolution of MountainBrook. *Merritt v. Merritt*, No. 02A01-9108-CH-00175, 1992 WL 220160, at *6 (Tenn. Ct. App. Sept. 14, 1992); *Vineyard v. Vineyard,* 170 S.W.2d 917, 920 (Tenn. Ct. App. 1942). Therefore, the July 2024 Order approving the asset sale, but not providing for any distribution of the proceeds thereof, did not fully dispose of Mr. Watson's claim. Likewise, it is undisputed that the July 2024 Order was not fully conclusive as to Mr. Watson as a party because he is still pursuing the original relief sought in his Verified Complaint, namely, any assets to which he is entitled pursuant to Tenn. Code Ann. § 48-249-620.

The lack of finality as to Mr. Watson's claim is further demonstrated by Mr. Watson's filings in this appeal. Mr. Watson filed his notice of appeal on August 21, 2024. Thereafter, on March 14, 2025, Mr. Watson filed an amended notice of appeal. This amended notice stated that Mr. Watson was appealing the July 2024 Order and an order entered by the trial court on February 26, 2025 (the "February 2025 Order"). In a filing with this Court on March 20, 2025, Mr. Watson averred that the February 2025 Order "expressly modifies" the July 2024 Order. He argued that our review of the July 2024 Order "would be improperly constrained" if we were to not also consider the February 2025 Order and that Tennessee Rule of Appellate Procedure 13(a) "permits – and indeed encourages" this Court to consider both orders so that it may review "the whole case[.]" A copy of the February 2025 Order was attached to Mr. Watson's March 20, 2025 filing. The

order incorporates by reference a transcript of the trial court's oral ruling from the bench, which includes this colloquy:

>    [MR. COXWELL'S COUNSEL]: Your Honor, if I ask -- would you agree to put in the order that you certify it as a final order that can be reviewed?

>    THE COURT: What do you say to that?

>    [RECEIVER'S COUNSEL]: Your Honor, we're already up on appeal as it is. You know, I guess that's -- I'd honestly rather it not be final at this point.

>    THE COURT: Well, and there may be other things that arise -- some other issues that can crop up during this process. I will not designate it as a final order.

Mr. Watson's claim for the dissolution and winding up of MountainBrook is not ripe for review so long as the litigation in the trial court as to that claim is ongoing.

"[I]n light of our disfavor of deciding piecemeal appeals, 'judicial economy alone does not justify abandoning the requirement of finality.'" *Levitt, Hamilton, & Rothstein, LLC v. Asfour*, 587 S.W.3d 1, 11 (Tenn. Ct. App. 2019) (quoting *Williams v. Tenn. Farmers Life Reassurance Co.*, No. M2010-01689-COA-R3-CV, 2011 WL 1842893, at *6 (Tenn. Ct. App. May 12, 2011)). A litigant who wishes to have an interlocutory order appealed cannot use Rule 54.02 to avoid the procedural requirements of Tennessee Rule of Appellate Procedure 9. *Tucker v. Capitol Recs., Inc.*, No. M2000-01765-COA-R3-CV, 2001 WL 1013085, at *7 (Tenn. Ct. App. Sept. 6, 2001). Accordingly, "[o]rders certifying interlocutory judgments as final 'should not be entered routinely' and 'cannot be routinely entered as a courtesy to counsel.'" *Harris v. Chern*, 33 S.W.3d 741, 745 n.3 (Tenn. 2000) (quoting *Huntington Nat'l Bank v. Hooker*, 840 S.W.2d 916, 921 (Tenn. Ct. App. 1991)). The July 2024 Order is not dispositive of any claim or party in this case and, therefore, should not have been certified as a final judgment pursuant to Rule 54.02. We dismiss this appeal for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, this appeal is dismissed. Costs are taxed to the appellant, John A. Watson, Jr., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE